WILLIAM S. HARMAN, Defendant in Error, vs. THE ILLI-
NOIS AND EASTERN COAL COMPANY, Plaintiff in Error.

*Opinion filed December 15, 1908.*

EVIDENCE—*when counsel is entitled to possession of memoranda
to cross-examine witness.* In assumpsit on a coal contract, where
the defendant claims a set-off for delay in delivery, if a witness
called by the plaintiff to show the delay was for causes excused
by the contract testifies to data relating to the output of the mine,
the days it was idle, etc., by referring constantly to report sheets,
counsel for defendant is entitled to have possession of the report
sheets for the purpose of cross-examining the witness, when it ap-
pears the latter has no independent recollection of the data he has
testified to.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on writ of error to the Mu-
nicipal Court of Chicago; the Hon. JOHN W. HOUSTON,
Judge, presiding.

Harman, defendant in error, sued the coal company,
plaintiff in error, in the municipal court of Chicago, in as-
sumpsit, to recover $700.82 claimed to be due him under
the provisions of a contract in words and figures following:

*"Contract No. 526.*

"William S. Harman agrees to sell and Illinois and Eastern
Coal Company (a corporation) of Chicago, Illinois, agrees to buy:

*"Quantity*—Buyer's requirements for buyer's retail trade at Ca-
nal and Ewing street yard, Chicago, from May 1, 1905, to April 1,
1906, estimated at two hundred cars of lump and one hundred and
fifty cars of egg, more or less.

*"Material*—Re-screened four-inch lump and re-screened egg
from Indiana Hocking mine, at Farmersburg, Sullivan county, In-
diana, same as furnished last year.

*"Price*—Lump, one dollar and forty cents ($1.40) per net ton,
f. o. b. cars mine; egg, one dollar and twenty cents ($1.20) per
net ton f. o. b. cars mine.

*"Delivery*—As ordered by buyer. Not less than fifteen cars
lump and ten cars egg during May, June and July, 1905. Not less
than twenty cars of lump and ten cars of egg any month thereafter.

*"Route*—C. & E. I. R. R. to Chicago and C., B. & Q. R. R. to
yard.

"*Terms*—Buyer to remit on or before the 15th of each month for all shipments of the preceding month.

"*Weights*—Mine or railroad weights, as ascertained at original point of shipment.

"This contract is made subject to strikes, accidents, car supply, delays in transportation or other causes beyond control.

"The buyer and seller, in entering into this contract, realize the uncertainty of deliveries growing out of strikes, casualties or other causes beyond the control of either party, and it is hereby mutually acknowledged that the intent of this agreement is not to bind either party as to failure to perform by reason of matters beyond the control of the party in default, but that the material shall be shipped by the seller and accepted by the buyer as per delivery specified, so far as the labor, the physical conditions at the respective plants and the ability of carriers will permit.

"It is agreed and understood that during such time or times as our production of coal shall be reduced, but not wholly prevented, by strikes, lockouts, delays, failure of transportation, accidents or other causes beyond our control, we shall ship to you such proportion of the coal actually produced from our mines as the maximum daily amount of coal hereby contracted for bears to the maximum daily amount of coal covered by all the contracts under which we may at such time or times be required to supply from said mines.

WILLIAM S. HARMAN, (Seal.)

ILLINOIS & EASTERN COAL CO. (Seal.)

R. L. Pottinger, *V. P.*"

It was admitted that there was a balance due to Harman for coal received by the company of the amount claimed by Harman, but the company interposed a plea of set-off or recoupment, claiming that there was $1328.92 due it from Harman on account of his failure to deliver the amount of coal which he was obligated to deliver by his contract. Upon a trial without a jury the court found there was nothing due on account of the claimed recoupment or set-off, and entered judgment in favor of Harman for $700.82. That judgment has been affirmed by the Appellate Court for the First District, and the company brings the cause to this court by writ of error.

STEDMAN & SOELKE, for plaintiff in error.

LESLIE H. WHIPP, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The briefs of the parties in this case are devoted principally to a discussion of the facts, which the law does not permit us to consider. The only question presented which is open for determination in this court arises upon the action of the court in sustaining an objection made during the cross-examination of the witness Conkel, who testified on the part of Harman. The proof showed, and it was not denied, that the coal company was unable to obtain from Harman the full amount of coal specified in the paragraph beginning with the word "quantity," which is a part of the contract set out in the foregoing statement of facts, and it offered testimony tending to show that in lieu of coal so specified which was not delivered it had been obliged to purchase other coal at a price higher than that fixed by the contract with Harman, and it was this difference in price that it sought to recover from Harman. For the purpose of meeting this alleged state of facts Harman offered evidence tending to show that during a certain part of the time covered by the contract the output of the mine was reduced by causes mentioned in the last paragraph of the contract, and that the coal company received its full proportion of the coal actually produced during that time, as that proportion was fixed by that paragraph. In order to prove what the output of the mine was during the time in question, and to show on what days the mine was idle on account of causes specified in the last paragraph of the contract, Harman took the testimony of Conkel, who was assistant mine superintendent of the Indiana Hocking mine and who superintended the operation of the mine during the time in question. The mine, when in active operation, produced from 800 to 1000 tons of coal per day. The witness testified as to the number of tons of various kinds of coal produced by the mine during the months of October, November and December, 1905, and January, February and March, 1906, and as to the days the mine was idle during

that time for causes specified in the contract. Practically the whole of the alleged shortage occurred during these months. The witness was unable to so testify from his unaided memory, but testified by constantly refreshing his memory as he proceeded, by referring to sheets of paper which he had in his possession while on the witness stand. The information on those sheets he had assisted in copying from the coal reports which were kept at the mine and which were at the mine during the time of the trial. These reports so kept at the mine, according to the testimony of this witness, showed the amount of coal mined each day, and were in that respect made up from weights taken by this witness as the cars loaded with freshly mined coal from time to time passed over the scales at the mine, and such reports showed also the dates upon which the mine was idle. Upon cross-examination of this witness the fact was developed that he could not testify in regard to the amount of the output and as to the dates on which the mine was idle except by reference to these sheets, which at that moment were in the court room and in the possession of counsel for Harman. Counsel for the company asked that he (counsel) be permitted to take them. Harman's attorney objected, because, as he stated, the witness "used the sheets to refresh his memory, and for no other reason than that, under the decisions witness can use a memorandum and testify to it, and it is not necessary for counsel to introduce it in evidence." The court sustained this objection and counsel for the company was not permitted to examine the papers. The purpose for which the sheets were desired by the cross-examiner, as stated by him at the time the objection was made and before it was passed upon, was for use in cross-examination. For that purpose he was entitled to have possession of these sheets and to examine them, in order that he might conduct the cross-examination of the witness with intelligence. (1 Taylor on Evidence, secs. 749-753; 1 Wharton on Evidence, sec. 525; 8 Ency. of Pl. &

Pr. 142, 143; 1 Greenleaf on Evidence, sec. 437; *Watson
v. Miller,* 82 Tex. 205.) No other witness testified who
pretended to have personal knowledge of the amount of the
output of the mine or of the number of days during which
the mine was closed for any of the causes mentioned in the
last paragraph of the contract.

For the error in sustaining the objection above discussed
the judgment of the Appellate Court and the judgment of
the municipal court will be reversed and the cause will be
remanded to the municipal court for further proceedings
consistent with the views herein expressed.

*Reversed and remanded.*