**John P. Justice, Plaintiff-Appellee, v. Pennsylvania Railroad Company, Defendant-Appellant.**

**Gen. No. 63–F–32.**

Fourth District.

May 20, 1963.

Walker and Williams, of East St. Louis (David B. Stutsman, of counsel), for appellant.

Goldenhersh & Goldenhersh, of East St. Louis, for appellee.

SCHEINEMAN, PJ.

This suit arises under the Federal Employers Liability Act. The alleged injury occurred on May 23, 1953, but the cause actually went to trial on March 12, 1962.

Plaintiff charged that he was injured while working for defendant, pushing a 250 pound barrel on a two-wheel hand truck across defendant's oil house platform. He testified that the right front wheel went through a hole in the platform, or a board gave way under the wheel, causing the truck to pitch forward, that after lurching forward it came back and hit him in the testicle. His answers to questions did not make it clear just what happened, and at one point he stated it happened so fast he didn't know just what happened.

The defendant questions the sufficiency of the evidence to sustain the verdict and asserts it is excessive in amount. In addition, the defendant makes two points of law; one, that the court declined to give an instruction on contributory negligence, and, two, that the court had prevented defense counsel from seeing the notes used by one of the medical witnesses in his direct testimony.

██ ██ In connection with the latter objection, we note that the medical testimony was conflicting in many respects, including the question of causal connection between the injury and the alleged accident.

The plaintiff was claiming that the blow had caused injury to the epididymi. According to some of the medical testimony the observed condition of the plaintiff could not have been caused by the accident, because it was of such a nature it had to have existed before. A general practitioner testified that in 1946 he had treated plaintiff for an infection and abscesses of the testicle, which was about six years before the accident.

Plaintiff's family doctor, a general practitioner, testified from his medical records, to which he referred throughout his examination. He was of the opinion the condition could have been caused by the trauma suffered in the accident. This witness denied, at first,

having any knowledge or note that plaintiff had been treated for a testicle condition some years before the accident. Upon being pressed regarding this and making further reference to his records, he admitted having knowledge (apparently the statement of the plaintiff) that the condition had been treated some years before. He also admitted that he had seen the plaintiff in 1950 concerning a swollen testicle and at that time he had opened it and drained it.

The general rule giving opposing counsel the right to inspect notes used by a witness to refresh his memory, and also the right of counsel to use such notes in cross-examination of the witness, is stated in American Jurisprudence as follows:

"The opposing party or counsel has the right, on proper demand, to inspect and use for purposes of cross-examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters to which he is testifying, and which in fact does tend to refresh his memory. The opposing party is accorded this right in order that he may ascertain whether the paper or memorandum used has any legitimate tendency to bring the fact in controversy to the mind of the witness, in order that he may be in a position to cross-examine as to the testimony given and thereby test the candor and integrity of the witness." 58 Am Jur, Witnesses, Sec 601.

This is clearly the settled law in this state. Harman v. Illinois & Eastern Coal Co., 237 Ill 36, 86 NE 625; Diamond Glue Co. v. Wietzychowski, 227 Ill 338, 81 NE 392.

As to the first case, Dean Wigmore states the following general rule:

"On a general principle, having in view the risk of imposition and false aids, against which the opponent is entitled to the means of protection, the writ-

ing must be shown to him on request. Furthermore, as by this opportunity of inspection the opponent is guarded against imposition clearly apparent, so by cross-examination based on the paper he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of the testimony." Wigmore on Evidence, Vol 2, Sec 762, Page 42.

The reason the court gave for denying defense counsel the right to use notes in cross-examination was, that they contained notes on treatment for other members of the family. We do not consider this a very good reason. The attorney would have no occasion to refer to notes concerning other members of the family and this material would not go to the jury.

On the other hand, this witness was very favorable to the plaintiff and, as noted, at first denied knowledge of previous treatment for a similar condition. Whether or not anything else in his notes could have been used to discredit his testimony, or weaken it, was a matter for counsel to decide, not the court. It was especially important under these conditions, and the failure to allow proper cross-examination becomes more serious when reference is made to the testimony of other medical experts. There was included the testimony of a urology specialist who was called by this witness for consultation in connection with treatment following the injury. This specialist testified that he was consulted only as to a kidney condition and not the testicle condition.

It is argued for plaintiff that the court did permit defense counsel to see the notes used by the witness. The transcript indicates that the judge merely held them out to permit counsel a glance at them for the purpose of seeing that there were other medical histories included. Counsel was not permitted to use the notes for purposes of cross-examination. The use of

the notes was essential to the witness, since the treatment was nearly ten years prior to the time of his testimony. Under these conditions, we conclude that the court's refusal to permit counsel to examine and use the notes, referred to by the doctor in the course of his direct examination, was reversible error.

■ Referring to the question of contributory negligence, it appears the judge regarded the testimony as insufficient to indicate negligence on the part of the plaintiff in any degree and, therefore, an instruction on this subject should not be given.

The rule on this subject has been thus stated: "Under the FELA the issue of negligence, as well as plaintiff's contributory negligence, is one for the jury to determine. . . . Only in the closest case, where the hypothesis of contributory fault is not fairly admissible, does the question become one of law for the court. Otherwise it is of the very essence of the jury's function to select from among conflicting inferences and conclusions that which it considers most reasonable. It can choose any reasonable hypothesis—and this is true of a defendant's negligence as it is of a plaintiff's contributory negligence." Marty v. Erie R. Co., 62 NJ Super 458, 163 A2d 167.

In Daulton v. Southern Pac. Co., 237 Fed2d 710, where there were no eyewitnesses, it was held that the jury had a right to search the evidence in order to reconstruct and determine what happened. On contributory negligence, the court stated: "Surely the company, on contributory negligence, is entitled to have the same rule work in its favor. . . . The lesson seems to be in Schulz v. Pac. R. Co., 350 US 523, 76 S Ct 608, that a jury can choose any reasonable hypothesis and that the rule works both ways."

In the present case the testimony of the plaintiff is somewhat vague, especially in his statement: "It happened so quick I couldn't tell what happened,"

that it was important to allow the jury to reconstruct the incident and consider whether contributory negligence was involved. There was no other person called by either side who had any recollection of seeing the occurrence or learning of it.

While contributory negligence is not a complete defense under the Federal Statute, it is proper for the jury to reduce the amount of damages by the proportion of contributory negligence involved. Under the facts in this case it is not apparent that there was no possible basis to find some contributory negligence. Thus, it was not a question of law for the court and the instruction should have been given.

Because of these errors in the rulings of the court, the defendant did not have a fair trial. The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

CULBERTSON and HOFFMAN, JJ, concur.