(No. 45072.

LAWRENCE JULIANO, Appellant, v. JOSEPH ORAVEC *et al.,* d/b/a MAJOR CONSTRUCTION COMPANY, Appellees.

*Opinion filed January 26, 1973.—Rehearing denied March 27, 1973.*

JAMES A. DOOLEY, of Chicago, for appellant.

HINSHAW, CULBERTSON, MOELMANN, HOBAN & FULLER, of Chicago (LEONEL I. HATCH, JR. and D. KENDALL GRIFFITH, of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff Lawrence Juliano was injured while employed by Schullo Plumbing Company in the construction of buildings owned by defendants Joseph and Emil Oravec, doing business as Major Construction Company. He brought this action based upon the Structural Work Act (Ill. Rev. Stat. 1959, ch. 48, pars. 60, 61 and 62) against the owners and Leonard Taylor, a carpentry subcontractor, against whom defendants Oravec filed a third-party complaint. A jury returned a $75,000 verdict against defendants Oravec—Taylor having been dismissed from plaintiff's action—and in favor of the Oravecs and against Taylor in the same amount in the third-party action. The Appellate Court for the First Judicial District reversed (3 Ill. App. 3d 835) on the ground that plaintiff had failed to prove that a willful violation of the Act was the proximate cause of his injuries. We granted leave to appeal.

On June 2, 1961, plaintiff was working on one of the two buildings being constructed by defendants at 5237-39 West Warwick Avenue in Chicago. As an apprentice plumber, Juliano both assisted and observed the two journeymen plumbers engaged in their trade and performed tasks at their direction, including carrying necessary materials to them. During that day the three men worked on the second floor of one of the two buildings, installing rough plumbing which was to be concealed in the walls. Construction on the building had reached a stage at which the exterior walls, the roof, and much of the interior framing had been completed. At the time of the injury, subflooring had been laid on the second floor. The subflooring consisted of 1-inch-by-8-inch spruce lumber, having a finished thickness of approximately 7/8 of an inch, nailed down to form a continuous surface. Ultimately, the subflooring was to be covered with what is termed finished flooring, but until that later phase of construction, the subflooring was the only support provided for those working on the building. No signs were posted on the site regarding the floor's safe load capacity.

At approximately 1:00 P.M. Juliano and his co-workers were installing soil, waste and vent pipes in the second-floor bathroom area. Approximately ten to twenty feet away from where they worked stood a portable butane furnace which the plumbers used to melt lead needed for making watertight pipe joints. At the request of one of the journeymen, Juliano dipped a quantity of molten lead from the furnace, using a ladle with a capacity of about two pounds and a handle fourteen inches in length. As he walked back to the bathroom area, Juliano's foot went through the subflooring up to the knee, his elbow hit the floor, causing the ladle of lead to be thrown toward him and molten lead went into his right eye and down his arm. Juliano's co-workers pulled him up from the jagged hole and removed the now-hardened lead from his eye. They then took him first to Northwest Hospital and

then to Garfield Park Hospital. The plaintiff suffered burns along his right arm from the shoulder down to a portion of his fingers; the burns on his right eye and lids caused the loss of sight in that eye and considerable physical distress. During the weeks following the accident plaintiff underwent surgery twice and an enucleation of the right eyeball was performed. Subsequently, he was fitted with a prosthetic eye.

Defendants' first contention is that the Structural Work Act has no application to this case. In support of this proposition it is argued that each of the three sections of the Act upon which plaintiff relies in some way excludes these facts. Section 1 in part provides that: "all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1959, ch. 48, par. 60.) Defendants claim that because the subflooring was built as an integral part of the building itself and not for "use in the erection," it cannot be considered one of the devices enumerated in the statute. In so arguing, defendants recognize that agreement with their position would necessitate overruling our decision in *Louis v. Barenfanger (1968), 39 Ill.2d 445,* wherein the court stated that "The Act itself nowhere excludes, expressly or impliedly, from its broad coverage permanent structures." (39 Ill.2d 445, 449.) The court is unwilling to reverse *Barenfanger,* and because it is clear that tradesmen engaged in the erection of the structure in question relied upon the

subflooring as their sole source of support while working, we must conclude that it was a "stay" or "support" within the ambit of the Act.

Defendants also claim that neither section 2 (par. 61) nor section 3 (par. 62) applies to the structure in this case because it was to be used as a "private residence." Section 2 of the Act requires that the floors of certain structures "be capable of bearing \*\*\* a live load of fifty (50) pounds for every square foot of surface in such floors, \*\*\*." Section 3 provides that the owners of certain types of structures under construction must "display conspicuously \*\*\* a placard stating the load per square foot of floor surface, which may with safety be applied to that particular floor \*\*\*." Both sections specifically exempt from their coverage private houses used exclusively as private residences. In this case, the buildings under construction were to be two-story apartment buildings with each floor a separate residence. For the reasons adequately discussed by the appellate court we reject defendants' construction of the Act. To conclude that any structure containing within it private residential units is outside the scope of the Act would be to frustrate the clear legislative intention of affording broad protection for working men.

Having determined that sections 1, 2 and 3 of the Structural Work Act apply to these facts, we now consider whether the jury properly could have found that a willful violation of these sections occasioned the plaintiff's injury.

We have examined the provisions of section 3 only once previously and then in the broad context of deciding the Structural Work Act's constitutionality. (*Claffy v. Chicago Dock & Canal Co. (1911), 249 Ill. 210, affirmed sub nom. Chicago Dock & Canal Co. v. Fraley, 228 U.S. 680, 57 L. Ed. 1022, 33 S. Ct. 715.*) In *Claffy* we said: "Section 3 provides that it shall be the duty of the owner of every house, building or structure (except a private house used exclusively as a private residence) in process of

construction, to fix and display conspicuously on each floor a placard stating the load per square foot of floor surface which may with safety be applied to that particular floor." (249 Ill. 210, 219.) The clear import of the statutory language is to give workingmen notice of the strength and safety of floors which they may be dependent upon for support during construction, and it is, by its terms, applicable whatever that strength may be. This mandatory duty is addressed solely to the owners of the buildings under construction as distinguished from the larger classes of persons affected by other of the Act's provisions. The burden imposed by this section exists in addition to other duties created by the Act, such as the requirement of section 2 that all floors of certain structures be capable of supporting a live load of fifty pounds per square foot of floor surface.

Plaintiff must, of course, establish a willful violation of the Act by defendant. Defendant is deemed to have known that which he reasonably should have known (*Miller v. DeWitt (1967), 37 Ill.2d 273, 291*), and included therein are the applicable statutory requirements. Not only must defendants here be held to have known of their own omission, but their failure to post placards should have been brought home to them further by the daily inspections of the work made by defendant Joseph Oravec.

The proximate cause of an injury is ordinarily a question of fact for the jury, to be determined from a consideration of all the attending facts and circumstances. (*Schultz v. Henry Ericsson Co. (1914), 264 Ill. 156, 167.*) The jury here could have found from all the evidence that had defendants ascertained and posted the weight which could be safely borne by the subflooring in question, the plaintiff would not have walked on the part posted as being inadequate to bear a man's weight. The jurors were properly instructed as to the plaintiff's burden in showing that his injuries were occasioned by defendants' violation of the Act, and we see no reason to disturb their finding.

Because of our conclusion that section 3 furnishes an adequate basis upon which to affirm the jury award, we need not consider the application of sections 1 or 2 to these facts.

The judgment of the Appellate Court for the First District is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*