(No. 45929.—

JULIUS TENENBAUM, Appellant, v. THE CITY OF CHI-
CAGO *et al.,* Appellees.

*Opinion filed March 24, 1975.*

RYAN and DAVIS, JJ., concurring in part and dissenting in part.

John G. Phillips, Ltd., and Joseph M. Fasano, Ltd., of Chicago (Dom J. Rizzi and Sidney Z. Karasik, of counsel), for appellant.

Howard & French (Richard G. French and Stuart N. Litwin, of counsel), for appellee City of Chicago.

Richard C. Valentine and Thomas W. Dempsey, of Lord, Bissell & Brook, of Chicago, for appellee O'Neil Construction Company.

PER CURIAM: Plaintiff, Julius Tenenbaum, brought this action in the circuit court of Cook County against the defendants, the City of Chicago and O'Neil Construction Company, to recover damages for personal injuries suffered while working on an underground water-treatment plant being constructed for the City. A jury returned a verdict in the amount of $150,000 in favor of plaintiff against both defendants, and the circuit court directed a verdict for $150,000 in favor of the City on its counterclaim against O'Neil for contractual indemnity. Judgment was entered on each of the verdicts.

The City and O'Neil appealed from the judgment entered against them in favor of plaintiff, and O'Neil appealed from the judgment entered against it in favor of the City. A divided appellate court, in three separate opinions, reversed the judgments, remanded the cause for a new trial (11 Ill. App. 3d 987) and thereafter issued a certificate of importance.

Plaintiff's original complaint contained one count

charging both defendants with negligence. Prior to trial, plaintiff filed an amended complaint containing two additional counts. In count II plaintiff alleged willful violations of the Structural Work Act (Ill. Rev. Stat. 1963, ch. 48, pars. 60 through 69) on the part of both defendants, and in count III he alleged willful violations by both defendants of the Safeguards During Construction Ordinance of the City of Chicago (Municipal Code of Chicago, ch. 75, par. 1 *et seq.*). In each of the three counts plaintiff alleged that the defendants were jointly in charge of the construction. Prior to trial, on plaintiff's motion, count I was dismissed, and the case was tried and submitted to the jury on counts II and III. The jury returned a general verdict in favor of plaintiff.

The testimony shows that the City had contracted with several prime contractors for the construction of the underground water-treatment plant. Both Link Belt Corp., plaintiff's employer, and defendant O'Neil were prime contractors who contracted directly with the City; there was no contractual relationship between the contractors. O'Neil, the first contractor on the job, was to construct the underground structure, and Link Belt was to install chemical mixing and scraping equipment. Seven engineers employed by the defendant city were assigned to the job and inspected the work daily.

Although several hundred photographs of the structure taken by the City during construction, and a number of engineering drawings, were used by the witnesses when testifying concerning the structure, neither the photographs nor the drawings were contained in the record filed in this court. We note parenthetically that the presence of the photographs and drawings would have greatly aided the court in its review of the testimony.

The underground structure covered an area of approximately 15 acres. The place where plaintiff was injured was referred to as Basin No. 4 and contained three levels. The roof of the structure was at ground level; 17 feet below the

roof was a floor called the intermediate level, and approximately 17 or 18 feet below the intermediate level was the bottom, or basement level. Located on the intermediate level was the coagulating room, where the water would be churned by paddle mixers. This room, approximately 130 feet in length, contained concrete walls so placed as to create a "maze" of smaller rooms or areas. Adjoining the coagulating room was the baffle area, described as a vertical chamber open from the roof to the basement. The purpose of the baffle chamber was to "baffle" the water back and forth for further mixing. The opening provided in the floor of the intermediate level for the baffle area was described as being 9 feet 6 inches wide, but there was no testimony as to its length.

On the morning of the occurrence, plaintiff, employed as Link Belt's labor foreman, sent two men down to the coagulating room to clean up any debris left there by Link Belt. Later that day a city engineer told plaintiff that he was not satisfied with Link Belt's clean-up operation, and plaintiff went down to the coagulating room to inspect it. Because the entire structure was to be filled with water, there had been no provision made for permanent lighting. Apparently there was a light in the first room of the maze, but when plaintiff entered the second or third room and attempted to turn on the temporary lights they would not work, so he used his flashlight. As he walked through the area he noticed debris and working materials left on the floor by Link Belt. As he was walking toward the baffle chamber something struck his arm, causing him to drop his flashlight, and it went out. While attempting to find the flashlight he tripped and fell into the open unbarricaded baffle chamber and plunged to the basement floor 17 or 18 feet below the intermediate level. He stated that while trying to regain his balance he felt the edge of a ladder which shifted with him as he fell. As a result of the fall, plaintiff suffered severe injuries.

It is plaintiff's theory that defendants are liable under

the Structural Work Act by reason of violation of three of its provisions. He contends that the evidence shows that the opening through which he fell had been used in the hoisting of concrete forms and other materials and equipment from the sub-levels to the surface grade of the project and that under the provisions of section 7 of the Structural Work Act (ch. 48, par. 66) defendants were required to enclose the opening by use of a fence or railing. He contends further that the ladder to which plaintiff referred in his testimony, in violation of section 1 of the Structural. Work Act, was not properly placed. Citing *Louis v. Barenfanger,* 39 Ill.2d 445, *Juliano v. Oravec,* 53 Ill.2d 566, *St. John v. R. R. Donnelley & Sons Co.,* 54 Ill.2d 271, and *Halberstadt v. Harris Trust & Savings Bank,* 55 Ill.2d 121, plaintiff also contends that the intermediate floor adjacent to the opening for the baffle area was being used as a scaffold or platform within the meaning of the Structural Work Act.

Defendants contend that plaintiff did not prove a *prima facie* case under the Structural Work Act and that the Safeguards During Construction Ordinance did not provide a civil remedy for its violation. Plaintiff argues that he proved his case under both the Structural Work Act and the city ordinance, and that even if the ordinance did not create a civil cause of action for its violation, the submission of that theory of liability to the jury was not prejudicial error.

We consider first plaintiff's contention that the floor from which he fell was a scaffold or platform within the meaning of the Structural Work Act.

*Barenfanger,* cited by plaintiff, was decided on the pleadings. There the plaintiff fell while walking along a series of metal girders known as long-span steel joists and T-rails which were a permanent part of the roof of the school building being constructed. In its opinion the court decided two questions: (1) that failure to provide scaffolding can be the basis of a cause of action under the

Structural Work Act and (2) that a permanent part of the structure used as a stay or temporary support is not, by reason of its permanent character, excluded from the Act. Because the case was decided on the pleadings there was no decision that there was a need for, or that defendant had failed to provide scaffolding, or that the roof girders were being used as a stay or temporary support within the meaning of the Act. The rationale of *Barenfanger* is that if there has been a failure to provide a safe, suitable and proper scaffold, ladder or support, and a part of the structure is used in lieu of such a scaffold, ladder or support, then that part of the structure is temporarily a scaffold, ladder or support within the meaning of the Act and must be safe, suitable and proper for such temporary use.

*Juliano* involved a plumber's apprentice who was carrying a ladle of molten lead when his foot went through the subflooring upon which he was walking, causing the lead to be thrown into his eye and down his arm. A jury returned a verdict of $75,000 under a complaint charging violations of sections 1, 2 and 3 (pars. 61, 62 and 63) of the Act. Section 1 required safe scaffolds, stays or supports; section 2 required that all floors of certain structures be capable of supporting a live load of 50 pounds per square foot of floor space; and section 3 required that the owners of certain buildings, during construction, conspicuously display on each floor a placard stating the load per square foot of floor surface which may with safety be applied to that particular floor. While there is language in the opinion that the subflooring was a "stay" or "support" within the Act, the holding was carefully limited with the statement: "Because of our conclusion that section 3 furnishes an adequate basis upon which to affirm the jury award, we need not consider the application of sections 1 or 2 to these facts." 53 Ill.2d 566, 572.

*St. John* involved a laborer who was carrying a

wooden runway on the roof of a building under construction when he fell through an opening and was killed. The openings in the roof were designed to receive heating, ventilating and lighting equipment which was to be installed later. A jury returned a $42,000 verdict in favor of the workman's parents. The narrow question before this court was defendant's contention that the roof, with openings to be later closed, could not, as a matter of law, be considered a temporary platform or support. Under the rationale of *Barenfanger,* we rejected this contention.

*Halberstadt* involved a window washer who fell from a commercial office building while washing windows and was killed. His widow filed an action under the Structural Work Act alleging that defendant failed to provide deceased with a safe scaffold for his work, necessitating his using corroded and paint-encrusted hooks affixed to the building as his sole means of support. The trial court dismissed the complaint and the appellate court reversed and remanded. We held that the complaint stated a cause of action.

In this case there is nothing to indicate the need for, or failure to provide, plaintiff with a scaffold or platform for his work. The floor at the intermediate level was not being used in any manner as a working platform or a scaffold for the purpose of completing construction. It was a completed floor and had been left by O'Neil, who had completed its work thereon, in the form in which it had been designed. Link Belt, plaintiff's employer, following O'Neil's departure, had not been using the floor as a scaffold but had been preparing pedestals on the floor upon which to mount machinery. That work had also been completed, and the forms had been removed. When plaintiff went into the coagulating area to inspect the clean-up operation, unlike *St. John,* he was not using the surface as a scaffold, but as a floor.

Paragraph 5(a) and (b) of count II of plaintiff's second amended complaint charged that the ladder over which he

tripped or against which he fell was improperly placed. Section 1 of the Act (par. 60) required scaffolds and ladders to be so placed "as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same." The obvious hazards of a scaffold or ladder are that workmen or materials may fall off such devices or that the devices themselves may fall. So far as this record shows, plaintiff could have tripped or fallen against a bench, box or some other object not named in section 1 of the Act and suffered the same injury. The ladder may well have been placed or left in the baffle area in a negligent manner and may have contributed to plaintiff's injury, but the testimony shows no violation of the Structural Work Act. It is only when an injury has some connection with the hazardous nature of one of the devices named in section 1 of the Act that a cause of action may be maintained under that section of the Act.

We consider next plaintiff's contention that in failing to barricade the opening through which materials had been hoisted defendants violated the Structural Work Act. Section 7 in pertinent part provided:

"If elevating machines or hoisting apparatus are used within a building in the course of construction for the purpose of lifting materials to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be enclosed or fenced in on all sides by a substantial barrier or railing at least eight feet in height." Ill. Rev. Stat. 1963, ch. 48, par. 66.

The evidence shows that defendant O'Neil and other contractors, including plaintiff's employer, had used the baffle chamber as a hoistway to raise and lower materials to and from the intermediate and basement levels through an opening in the roof of the structure. There was a conflict in the testimony as to when the hoisting activities ended, but it is undisputed that on the date of the occurrence the opening through which plaintiff fell was not barricaded, and that the hole in the roof was closed,

thereby terminating the hoisting activities and shutting off the source of natural light for the interior.

Plaintiff argues that even though the baffle chamber was no longer used as a hoistway, defendants, under the provisions of section 7, were required to maintain the barricades so long as workmen were employed in the area. In *Claffy v. Chicago Dock and Canal Co.* 249 Ill. 210, speaking of section 7, the court said: "The statute was designed to protect all persons working on the floor of the building from walking or falling into the opening, except those who were engaged in unloading material from the elevators raised through the shaft." (249 Ill. 210, 222.) We do not interpret section 7 to mean that the duty to maintain the fence or barrier ended with the termination of hoisting operations. The danger against which the statute is directed, *i.e.*, the danger of falling into the opening, ends not with the termination of hoisting operations, but when there is no longer the danger that workmen engaged in the construction work will fall into the unbarricaded opening. On this record section 7 of the Structural Work Act was clearly applicable, and willful violation of its provisions could result in liability under the provisions of section 9.

We consider next the contentions of the parties concerning the city ordinances allegedly violated by defendants.

Count III of plaintiff's second amended complaint alleged violations of section 75—1.1(c) of the Safety Requirements Ordinance and sections 76—1, 76—4(a) and (b) of the Safeguards During Construction Ordinance, which provide:

"75—1.1. Guards shall be required at every point of danger including the following:

\* \* \*

(c) At all sides of every open areaway exceeding three feet in depth except the side providing access to a stairway.

\* \* \*

76—1. (a) *Statutory Provisions.* All persons having the control or supervision of any building in course of erection shall comply with an act of the Legislature of the State of Illinois entitled 'An Act Providing for the Protection and Safety of Persons in or about Construction, Repairing, Alteration, or Removal of Buildings, Bridges, Viaducts, and other Structures and to Provide for the Enforcement Thereof,' approved June 3, 1907, and as amended.

\* \* \*

76—4. (a) *Covering of Openings.* All stairways, elevator openings, flues and all other openings in the floors shall be covered or properly protected.

(b) *Openings for Hoists.* All openings through which hoists operate shall be properly enclosed on all sides."

Plaintiff contends (1) that section 76—1(a) of the Safeguards During Construction Ordinance incorporated the Structural Work Act including section 9 (par. 68), which creates a civil cause of action for personal injuries caused by violations of that Act, and (2) that the defendant city had authority to create such a cause of action.

The City and O'Neil argue: (1) that the city ordinances relating to safety requirements did not directly, or by incorporation, create a civil remedy for personal injuries caused by violations of the ordinances, and (2) that the defendant city had no authority to create such a remedy.

We do not agree with plaintiff that section 76—1 of the ordinance served to incorporate therein section 9 of the Structural Work Act. It stated only that persons having the control or supervision of any building in course of erection shall comply with the Structural Work Act. The ordinance made no provision for civil remedies for its violations, and it did not purport to adopt or expand the civil remedy provided in section 9 of the Structural Work Act.

The language of these ordinance provisions was used in the issues instruction. While the issues instruction was

marked IPI Civil 60.01 (Illinois Pattern Jury Instructions, Civil (2d ed. 1971)), which pertains to "Violation of Statutes or Ordinance," the instruction, as given, was modified to the extent that liability would attach if there was a violation of the ordinance which was the proximate cause of the injury. The jury was not instructed, as stated in IPI Civil 60.01, that violation of the provisions of the ordinances was a fact to be considered together with all the other facts and circumstances in evidence in determining whether the defendants were negligent. It was error to submit plaintiff's case to the jury on the theory that defendants could be liable by reason of violations of the ordinances without regard to the issues of negligence and contributory negligence. We agree with the appellate court that the error was so prejudicial as to require reversal of the judgment.

Inasmuch as the city ordinance relating to safety in the construction of buildings did not attempt to create a civil cause of action for injuries caused by its violation, we need not and do not consider the contentions of the parties concerning the City's authority to create such an action.

O'Neil contends that as a matter of law it did not have "charge" of the construction within the meaning of the Structural Work Act. It argues that it had completed its concrete and construction work in the maze and baffle areas and had moved out its lighting, forms, barricades, ladders and equipment three months before plaintiff's injury. O'Neil had constructed the basic structure, and other prime contractors were installing equipment in the structure. The City had not accepted the project, and O'Neil was still required to make tests and patch any leaks in the structure, including the baffle chamber. Even if O'Neil had temporarily left the baffle area at the time of the occurrence there was evidence from which the jury could find that it still had charge of the construction operations within the meaning of the statute, and "control

and supervision" of the structure within the definition of the ordinance.

Having determined that the cause must be remanded, we deem it advisable to consider two matters which might recur upon retrial. Defendants contend that the circuit court erred in its refusal to permit certain cross-examination of the plaintiff. Following plaintiff's testimony that he had tripped over a ladder, the trial court would not permit defendant O'Neil to show in impeachment that plaintiff, in a discovery deposition, had testified that he had felt no obstruction before he fell. It also appears that plaintiff had refreshed his recollection from a statement in his history taken at the hospital to the effect that he had fallen from a ladder. The circuit court would not permit defendant to cross-examine on the statement used in plaintiff's recollection process. We agree with the appellate court that the circuit court erred in refusing to permit cross-examination on the deposition (see *Sommese v. Maling Brothers, Inc.,* 36 Ill.2d 263), and on the source of plaintiff's refreshed recollection. See *Harman v. Illinois and Eastern Coal Co.,* 237 Ill. 36.

The majority of the appellate court held that the circuit court erred in permitting plaintiff's counsel to read to the jury portions of the Safeguards During Construction Ordinance. Under the circumstances shown we agree for the reason that it is the duty of the court to instruct the jury as to the law, and counsel should not be permitted to read ordinances to the jury. In its discussion of the general issue presented, however, the appellate court also held that although evidence of safety standards and rules was admissible in an action based on negligence it was not admissible in an action based on the Structural Work Act. With this conclusion we do not agree. Just as evidence of regulations, standards and building codes may be admitted to aid the finder of fact in deciding the standard of care in a negligence action (*Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326), it may be admitted in

an action based on the Structural Work Act as an aid to the jury in determining whether a violation of the Act was willful.

Defendant O'Neil has briefed and argued contentions concerning allegedly improper argument by plaintiff's counsel and the defendant city's counterclaim for indemnity. We have examined the argument and are of the opinion that the comments of which defendant complains are not likely to be repeated on retrial. In view of our reversal of plaintiff's judgment, there is, of course, at this time, no basis for entry of a judgment of indemnity, and consideration of the issues raised by defendant O'Neil would best await examination of the record made on retrial.

For the reasons stated, insofar as it remands the cause for retrial on count II, the judgment of the appellate court is affirmed, and insofar as it denies a new trial on count III the judgment of the appellate court is reversed, and the cause is remanded to the circuit court of Cook County for a new trial on both counts.

*Affirmed in part, reversed in part and remanded.*

MR. JUSTICE RYAN, with whom MR. JUSTICE DAVIS joins, concurring in part and dissenting in part:

I cannot agree with the interpretation of section 7 of the Structural Work Act (Ill. Rev. Stat. 1963, ch. 48, par. 66) adopted by the opinion of the court. In my opinion section 7 does. not impose a duty to erect barricades around all openings on construction projects but only around those shafts or openings through which elevating machines or hoisting apparatus operate. If the legislature had intended to protect construction workers against the hazards of falling into any hole or opening on a construction site, it could have provided, as did the city of Chicago in section 76—4(a) of its Safeguards During Construction Ordinance, that all openings in the floors be covered or

properly protected. The legislature did not so provide but only saw fit to apply the special protection of the Structural Work Act to the special hazards created by openings which are used in connection with elevating or hoisting operations. Section 7 is not intended to extend the protection of the Act to accidents which happen in a permanent opening not being used for elevating or hoisting material.

Under the construction given to section 7 by the opinion of the court, the plaintiff's right to recover under the Act depends upon the pure happenstance of the use of this baffle chamber at some time as a hoistway. The plaintiff was exposed to no special danger or additional hazard by virtue of the fact that at some time during the construction of the building material had been hoisted through this opening. He would have been exposed to the same danger if the opening had never been used for that purpose. The opinion recognizes that the requirements of section 1 of the Act are designed as a remedy for the special hazards incident to the use of scaffolds and ladders and other equipment mentioned in that section. I think the same reasoning requires that the provisions of section 7 of the Act be limited to the special dangers created by hoisting or elevating operations on a construction site.

I would agree that the duty to barricade would continue under section 7 even after hoisting operations are terminated if the hoistway was a temporary opening which would eventually be sealed off. I adopt this reasoning because in this event the opening would constitute a special hazard that had been created by the hoisting operation, but that was not the situation in this case. The baffle chamber was a permanent opening in the structure and could not fulfill its intended function if barricaded. At some point in time someone would necessarily have had to remove whatever barricades were present. Any special dangers related to the hoisting ceased when the hoisting operation ceased, and in my opinion at that point in time

the special protection afforded by section 7 of the Act terminated.

This court has held that the Structural Work Act was not intended by the legislature to cover any and all construction activities whatsoever. (*Crafton v. Knight & Associates, Inc.,* 46 Ill.2d 533.) All activities carried on in the construction area do not enjoy the benefits of the Act. The Act was designed to protect against certain specific extra-hazardous construction operations, and it is only when an injury has some connection with the hazards of the particular operation specified in the statute that relief may be had under the Act. Thus, in regard to section 7 of the Act, I believe that it is only when an injury has some connection with the extra-hazardous nature of hoisting or elevating materials within a building that a cause of action should be available under that section. In my dissent in *McNellis v. Combustion Engineering, Inc.,* 58 Ill.2d 146, 152, I urged this same position in regard to section 1 of the Act. The opinion of the court in the case we are now considering has applied this theory which I have heretofore urged insofar as it relates to section 1 of the Act. I maintain that the same principle should be applied to section 7, which in my opinion would require a reversal of the judgment of the circuit court without remandment.

I concur with the remainder of the opinion.