DAVID K. MILLER *et al.*, Plaintiffs-Appellants, v. ARCHER-DANIELS-MIDLAND COMPANY *et al.*, Defendants-Appellees (Archer-Daniels-Midland Company, Third-Party Plaintiff; R and R General Contractors, Inc., Third-Party Defendant).

Fourth District   No. 4—93—0756

Argued March 23, 1994.—Opinion filed May 25, 1994.

David J. Kupets (argued), of Becker, Baizer & Rapoport, of Highland Park, for appellants.

Jerrold H. Stocks (argued) and Glen A. Featherstun, both of Winters, Prince, Featherstun, Johnson & Gaumer, of Decatur, for appellee Archer-Daniels-Midland Company.

Karen L. Kendall and Adrian E. Harless (argued), both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee Tri-R, Inc.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1991, David and Marsha Miller filed their initial complaint against defendants, Archer-Daniels-Midland Company (ADM) and All Tri-R, Inc. (Tri-R), based on common law negligence and the Structural Work Act (Act) (Ill. Rev. Stat. 1989, ch. 48, pars. 60

through 69) to recover damages sustained when David Miller (Miller) fell through a man lift opening. After plaintiffs filed an amended complaint, the trial court granted summary judgment in favor of defendants, concluding that (1) this lawsuit did not fall within the Act, and (2) no genuine issue of material fact existed regarding the negligence claim. Plaintiffs appeal, and we affirm.

## I. BACKGROUND

The record before the trial court on the issue of summary judgment discloses the following facts. In September 1989, Miller was working his fourth or fifth day for R&R General Contractors, Inc. (R&R), at ADM's Industrial Isolate Building, which was under construction. ADM owned the property and coordinated the contractors doing the construction work. Tri-R was one of three subcontractors. The flooring on which Miller worked was being installed by Tri-R; the handrails were being installed by Miller's employer, R&R.

Miller was instructed by his R&R supervisor to work with another man on the top level of the building, the fifth-floor mezzanine, to install handrailing. His duties were to follow the other worker, who was welding the handrail, with a hand-held grinder to prepare the handrail for finishing.

Miller walked up the stairs, five floors plus the mezzanine level, in the morning, but he took the man lift down on his morning break. To get to the man lift, Miller had to walk down the stairs from the fifth-floor mezzanine to the fourth floor. The man lift was not accessible from the fifth floor because it terminated at the fourth floor. However, apparatus from the man lift protruded three to four feet above the fifth floor. The hole surrounding this apparatus on the fifth floor was open and obvious, and Miller admitted he had noticed it. This hole did not have any handrailing or other guarding, and the floor surrounding it was metal grating.

Miller had worked approximately four hours before the accident occurred and had come down from the fifth-floor mezzanine once during that time for his morning break. After his morning break, Miller took the man lift back to the fourth floor and then walked up the stairs to the fifth-floor mezzanine. At lunchtime, Miller descended the stairs from the mezzanine to the fifth floor in order to take the man lift down from the fourth floor again. However, just before he reached the fifth-floor level, he remembered that he had left his jacket upstairs, and he returned to the mezzanine to retrieve it. His co-worker went ahead without him; consequently, no one witnessed the accident.

After Miller got his jacket and descended to the fifth floor, he walked toward the man lift opening, intending to take the stairs down to the fourth floor to board the man lift. He veered his course slightly in order to check the motor of the man lift (that motor had been worked on earlier, although no one was working on it at the time). Miller tripped and fell into the man lift hole and down to the fourth floor. He does not know what caused him to trip. This fall seriously injured him.

## II. THE STRUCTURAL WORK ACT

After a hearing on defendants' motions for summary judgment, the trial court concluded that this action did not fall within the Act and granted summary judgment in favor of defendants on the counts alleging a violation of the Act. Miller contends the trial court erred in doing so because, at the time of injury, he was on a temporary support performing an activity covered by the Act.

A trial court should grant summary judgment when the pleadings, depositions, and affidavits show that (1) no genuine issue of material fact exists, and (2) the moving party is entitled to judgment as a matter of law. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223, 1224; *Tracy v. Montgomery Ward & Co.* (1990), 193 Ill. App. 3d 304, 307, 549 N.E.2d 984, 986; see also Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) Summary judgment in cases brought under the Act is appropriate "where the material facts are not in dispute and the controversy is over the proper construction of the *** Act and whether the facts sustain a cause of action." *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 524, 439 N.E.2d 12, 16.

To sustain a cause of action under the Act, the plaintiff must establish the following elements: (1) he was involved in a construction activity covered by the Act; (2) the activity took place on a structure covered by the Act; (3) a scaffold or similar device defined by the Act was being used; (4) the device was unsafe or not safely placed; (5) the unsafe condition proximately caused the injury; (6) the defendant was in charge of the work; and (7) the defendant willfully violated the Act. (*Cockrum v. Kajima International, Inc.* (1993), 243 Ill. App. 3d 402, 410, 610 N.E.2d 1373, 1378.) The purpose of the Act is to prevent injuries to persons involved in hazardous activities during structural work, such as erecting, repairing, altering, painting, or removing buildings or other structures. Although the courts should construe the Act liberally to achieve this purpose, the Act is not intended to cover all construction activities or all injuries that happen to occur at a construction site. *Vuletich*, 117 Ill. 2d at 422, 512 N.E.2d at 1224.

Miller asserts that the Act applies in this case because it falls in the line of cases holding that an employee is covered until he completely dismounts a support. (See *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452-53, 473 N.E.2d 946, 950; *Carrillo v. Pepper Construction Co.* (1990), 201 Ill. App. 3d 647, 649-50, 559 N.E.2d 191, 193; *Roberson v. Molleck* (1992), 230 Ill. App. 3d 877, 880, 596 N.E.2d 182, 184.) ADM and Tri-R maintain that the Act does not apply here because Miller was not on a support at the time of his injury; instead, Miller was simply using a permanent structure of the building as a floor for the purpose of ingress or egress. See *Vuletich*, 117 Ill. 2d at 423-24, 512 N.E.2d at 1225-26; *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 370-71, 325 N.E.2d 607, 612-13.

The cases upon which Miller relies state that a court must first find the device in question to be one covered by the Act before the court determines whether the worker is covered while mounting or dismounting it. (*Carrillo*, 201 Ill. App. 3d at 649-50, 559 N.E.2d at 193; *Roberson*, 230 Ill. App. 3d at 880, 596 N.E.2d at 184.) For example, in *Simmons*, the court found that the ladder which the worker was climbing down when he fell was a scaffold under the Act. Therefore, the Act covered the worker until he completely dismounted the ladder. (*Simmons*, 104 Ill. 2d at 452-53, 473 N.E.2d at 950.) In the present case, Miller assumes that he was on a support at the time of injury, as shown by his attempt to characterize his activity at the time of injury as dismounting a support. However, Miller has failed to supply authority for his position other than the fact that he was on a structure characterized as a series of catwalks.

■ Whether a device constitutes a support under the Act is a matter of statutory construction and, therefore, a question of law for the court to determine. (*Vuletich*, 117 Ill. 2d at 421, 512 N.E.2d at 1224.) The intended use of the device at the time of injury determines whether it constitutes a support or scaffold under the Act. *Vuletich*, 117 Ill. 2d at 422, 512 N.E.2d at 1225; *Tenenbaum*, 60 Ill. 2d at 370-71, 325 N.E.2d at 612-13; *Stead v. Valentine* (1991), 218 Ill. App. 3d 1002, 1005, 578 N.E.2d 1227, 1230 (porch was not a support, and plaintiff's walking across it to retrieve an object was not covered by the Act); *Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878, 881-82, 473 N.E.2d 385, 386-87 (floor was not a support where it was being used merely to walk on while transporting pipes); *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 664, 418 N.E.2d 1011, 1014 (floor was not a support where it was simply being used as a means of ingress and egress).

In *Vuletich*, the plaintiff was injured when climbing stairs to a tool-storage trailer to replace a broom. The court held that the stairs

did not constitute a support under the Act because the plaintiff merely used the stairs as a pathway to gain access to the tool trailer and not as a support in order to perform some type of structural work. The court also noted that the plaintiff was not performing the hazardous type of activity meant to be covered by the Act; instead, he was merely climbing the stairs to return a broom. *Vuletich*, 117 Ill. 2d at 423-24, 512 N.E.2d at 1225-26.

In *Tenenbaum*, the court also applied the reasoning that whether a device constitutes a support depends upon its intended use at the time of injury. (*Tenenbaum*, 60 Ill. 2d at 370-71, 325 N.E.2d at 612-13.) The plaintiff there was inspecting an intermediate level and fell down an opening in the floor while searching for a flashlight he had dropped. The court held that the floor was not a support or a scaffold under the Act because it was not being used as a worker platform or as a scaffold for the completion of construction. The court noted that a completed, permanent floor does not constitute a support device. *Tenenbaum*, 60 Ill. 2d at 370-71, 325 N.E.2d at 612-13.

Just as in *Vuletich* and *Tenenbaum*, at the time of Miller's injury in this case, he was using the catwalk only as a floor or pathway and not as a temporary staging platform or scaffold. Miller's descent to the man lift is essentially the same as the plaintiff's ascent of the stairs in *Tenenbaum*. Miller was not using the floor for any hazardous activity of the type intended to be protected by the Act; he was simply walking across the grate floor. For the reasons stated, we hold that the trial court correctly granted summary judgment on the portion of the complaint based on a violation of the Act.

## III. NEGLIGENCE

The trial court also granted summary judgment in favor of ADM and Tri-R on the negligence counts, finding that, as a matter of law, ADM and Tri-R did not owe Miller a duty of reasonable care under the circumstances of this case.

### A. *ADM*

The trial court granted summary judgment in favor of ADM based on its finding that ADM did not owe Miller a duty of reasonable care because (1) he was not boarding or getting off the man lift, (2) he saw the hole and nevertheless approached it, and (3) he could have safely walked around it. Miller contends ADM owed him a duty because (1) although the hole was an open and obvious danger, he was likely to be distracted from it, or (2) ADM's alleged violations of applicable safety codes.

The general rule in premises liability cases is that a possessor

of land owes a duty of reasonable care under the circumstances toward invitees or licensees. (Ill. Rev. Stat. 1989, ch. 80, pars. 301 through 304.) This means that a possessor of land is liable for physical harm caused by a condition of his land only if he knows or should have known that persons will fail to recognize the dangerous nature of the condition or will fail to protect themselves against the danger. In other words, a possessor of land is not liable for injuries caused by a condition whose danger is open and obvious. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 143-51, 554 N.E.2d 223, 228-32; Restatement (Second) of Torts §§ 343, 343A (1965).) Illinois courts recognize an exception to this rule when the injury occurs because the plaintiff is distracted from the dangerous condition. *Dinkins v. Ebbersten* (1992), 234 Ill. App. 3d 978, 988-92, 600 N.E.2d 873, 879-82; *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 782-84, 489 N.E.2d 35, 37-38.

In *Dinkins*, plaintiff argued that plaintiff's decedent, a painter, was distracted by debris on the work site and a bulldozer he had to walk around while carrying a ladder, thus resulting in his electrocution when the ladder came into contact with power lines. The court, in determining whether to apply the distraction exception, stated the relevant inquiry was whether defendant had reason to expect that even if Dinkins knew of the danger of the power lines, he would be distracted during his work and encounter the danger due to that distraction. The court held that the distraction exception did not apply because the debris and bulldozer could not be characterized as distractions simply because Dinkins chose to walk around them. Precisely because Dinkins was walking around the bulldozer and debris, there was nothing in his path to distract him. *Dinkins*, 234 Ill. App. 3d at 991-92, 600 N.E.2d at 881-82.

In contrast, in *Shaffer*, a worker was distracted while working and accidently fell down a hole he knew existed. Although the worker knew of the hole, he was involved in helping put a heavy and awkward piece of construction in place. Thus, his attention was directed away from the hole and toward the task at hand. Because his work distracted him from the hole, the distraction exception applied and created a duty. *Shaffer*, 140 Ill. App. 3d at 782-84, 489 N.E.2d at 37-38.

■ The instant case is analogous to *Dinkins* and dissimilar from *Shaffer*. Miller was not working at the time he fell. He was not distracted from the hole in any way, least of all by some work task he was performing, as was the worker in *Shaffer*. In fact, Miller purposefully approached the hole while on his lunch hour. Like the painter in *Dinkins*, Miller was focused precisely on his path, and no distractions occurred to cause his attention to be taken from his

path. Consequently, the distraction exception does not apply, and ADM did not have a duty to protect Miller from the open and obvious hole of which he was aware.

■ While alleged violations of codes which do not contain language creating a statutory duty may be evidence of failure to exercise reasonable care, the violations do not create a duty where none otherwise exists. (*Feldscher v. E&B, Inc.* (1983), 95 Ill. 2d 360, 370, 447 N.E.2d 1331, 1336.) Violations of Occupational Safety and Health Administration standards may constitute evidence of negligence but do not create a statutory duty. (See 29 U.S.C. § 666 (1988).) Building Officials & Code Administrators and American National Standards Institute standards are promulgated by private institutions; they do not create a statutory duty. We have already held that ADM did not have a duty to protect Miller from the open and obvious hole. Accordingly, the alleged violations of these safety codes did not create a duty where, as here, no other duty existed. The trial court did not err in granting summary judgment in favor of ADM on the portions of the complaint alleging negligence.

### B. *Tri-R*

The trial court granted summary judgment for Tri-R based on its finding that Tri-R did not have a duty to erect guardrails where the construction plans did not call for them, nor did Tri-R have a duty to erect temporary safety features when no construction was occurring in the immediate vicinity of the man lift hole. Miller contends that Tri-R, as the constructor of the flooring, owed him a duty to protect against dangerous conditions in the flooring.

■ Tri-R did not own the property; it was merely a subcontractor hired by ADM. As an independent contractor, Tri-R owed no duty to judge the plans it was instructed to carry out. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209-10, 384 N.E.2d 368, 371.) Tri-R did not construct the man lift and, according to the plans supplied by ADM, was not required to erect a guardrail or other safeguards around it. Tri-R followed the instructions it had been given. Tri-R was not Miller's employer, nor was it in charge of Miller's activities. In fact, it was not in charge of any construction activities in the vicinity of the man lift at the time of the accident. Under these circumstances, the trial court did not err in finding that Tri-R did not owe a duty to Miller of providing safeguards around the hole.

### IV. CONCLUSION

For the reasons stated, we affirm the trial court's grant of sum-

880

mary judgment in favor of ADM and Tri-R on all counts.

Affirmed.

COOK and GREEN, JJ., concur.