TOM TINDELL, Plaintiff-Appellant and Cross-Appellee, v. ROBERT Mc-CURLEY, Defendant and Third-Party Plaintiff-Appellee and Cross-Appellant (Robert Calhoun, d/b/a Calhoun Plumbing, Third-Party Defendant-Appellee and Cross-Appellant).

Fourth District   No. 4—94—0612

Reversed and remanded.

Argued March 21, 1995.—Opinion filed June 8, 1995.

COOK, J., dissenting.

Robert J. McIntyre (argued), of Bucklin & McIntyre, P.C., of Springfield, for appellant.

Barbara B. Collins (argued), of Stratton, Dobbs & Nardulli, of Springfield, for appellee Robert Calhoun.

Matthew D. Bilinsky (argued) and Randall A. Mead, both of Drake, Narup & Mead, P.C., of Springfield, for appellee Robert McCurley.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Tom Tindell was injured on a construction job in October 1989 when he fell from a stepladder. He brought an action under the Structural Work Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) against the general contractor on the job, defendant Robert McCurley. Defendant McCurley brought a third-party complaint against plaintiff's employer, Robert Calhoun, who was the plumbing subcontractor for the job.

Following trial, the jury returned a verdict in favor of plaintiff and apportioned liability equally between defendant McCurley and third-party defendant Calhoun. The jury awarded plaintiff no damages, however. Plaintiff appeals, arguing the jury's verdict was manifestly inadequate, and seeks a new trial limited to the issue of damages. Defendant McCurley argues the verdict was erroneous in that it found a violation of the Act. He seeks a ruling there was no violation of the Act or, in the alternative, a new trial on all issues. Third-party defendant Calhoun filed a cross-appeal, requesting that in the event a new trial is ordered, the third-party liability issue also be retried. McCurley moved to dismiss Calhoun's cross-appeal, arguing the issue was waived by not being raised in a post-trial motion. We reverse and remand to the trial court for a new trial on all issues, including the third-party claim.

Plaintiff was attempting to drill water lines from the main floor to the basement when the drill bit hit an obstruction. Plaintiff started to the basement to see what was obstructing his drilling. At that

time the stairs from the first floor to the basement had not been completed. McCurley had placed a six-foot stepladder in the opening to the basement and used it to get to the basement to begin working on the stairs between the basement and first floor. As he approached the basement, plaintiff saw a stepladder in the entry. He stepped onto the top of the ladder and as he placed his second foot on the ladder, it moved, causing him to fall. Plaintiff testified he fell face down on the concrete basement floor. Immediately after the fall, he noticed pain in his right knee and left elbow.

Plaintiff introduced uncontradicted evidence of his medical expenses and lost wages as a result of the injury. He also testified as to the pain he suffered and the remaining disabling effects of his injury.

At the close of plaintiff's evidence, defendant moved for a directed verdict arguing that since plaintiff was not performing actual construction work on the ladder, but using it as a means of access to the basement, plaintiff's accident was not within the coverage of the Act. The court denied the motion. Following testimony from defendant's witnesses, all three parties moved for directed verdicts and all were denied.

The jury returned the verdict. The effect of the verdict was a finding for defendant McCurley in his contribution claim against third-party defendant Calhoun and the allocation of 50% of the fault for plaintiff's injuries to each of them.

In May 1994, plaintiff filed a motion for a new trial on damages only or, in the alternative, a new trial on all issues. Defendant filed a motion in which he asserted the court erred in denying his motions for directed verdict at the close of plaintiff's case in chief and at the close of all evidence. The motions were denied June 17, 1994. Plaintiff filed a notice of appeal to this court June 29, 1994. Defendant filed a notice of cross-appeal July 6, 1994. On July 7, 1994, third-party defendant Calhoun filed a cross-appeal asking that in the event the trial court's decision is reversed, a new trial on McCurley's third-party complaint be granted as well.

■ Defendant argues plaintiff's injury is not covered by the Act since plaintiff was using the ladder as a means of access from the first floor to the basement at the time of his injury. The question of whether a particular device is covered by the Act is a question of law for the court. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223, 1224; *Miller v. Archer-Daniels-Midland Co.* (1994), 261 Ill. App. 3d 872, 876, 634 N.E.2d 1108, 1111.) Section 1 of the Act provides:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person,

firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1989, ch. 48, par. 60.

In determining whether a particular device is covered under the Act, a court must ascertain the intended use of the device at the time of the injury. (*Lafata v. Village of Lisle* (1990), 137 Ill. 2d 347, 354, 561 N.E.2d 38, 42; *Vuletich*, 117 Ill. 2d at 422, 512 N.E.2d at 1225.) "[I]t is the use of the device in question, not the nature of the work performed, that is dispositive." *Vuletich*, 117 Ill. 2d at 422, 512 N.E.2d at 1225.

The supreme court in *Vuletich* found temporary stairs providing a means of ingress and egress to a tool storage trailer were not a support as that term is used in the Act. (*Vuletich*, 117 Ill. 2d at 423, 425, 512 N.E.2d at 1225, 1226.) This court in *Miller* found a catwalk was only a floor or pathway and not a temporary staging platform or scaffold where the injured person was simply walking across the grate floor. It was further stated the plaintiff was not using the floor for any hazardous activity of the type intended to be protected by the Act. *Miller*, 261 Ill. App. 3d at 877, 634 N.E.2d at 1112.

However, there is no doubt that ladders are items specifically listed as covered by the Act. (Ill. Rev. Stat. 1989, ch. 48, par. 60.) The ladder was being used in the erection of a house, placing it squarely within the activities listed in the Act. Ill. Rev. Stat. 1991, ch. 48, par. 60.

It is undisputed that plaintiff was not performing work *on* the ladder. He was, however, using the ladder to get to the basement in direct connection to his work duties, as he was going to check for the obstruction. He was directly engaged in his work activities at the time of his injury. Plaintiff's intended use of the ladder from which he fell was the means of access to the basement, but his stated need for access to the basement was in performance of his construction activities.

This is similar to the situation in *Dubrovich v. Commonwealth Edison Co.* (1991), 209 Ill. App. 3d 498, 568 N.E.2d 285, where the plaintiff had to use a makeshift ladder to perform his assigned tasks. The court rejected defendant's argument that plaintiff was merely moving about the jobsite when he was injured. The court found the

injured plaintiff was engaged in protected structural work activities despite the fact he was not using the ladder to directly perform his assigned tasks. (*Dubrovich*, 209 Ill. App. 3d at 502-03, 568 N.E.2d at 288; see also *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 529, 515 N.E.2d 157, 165 (wherein the court distinguished *Vuletich* and found a ladder providing necessary access to a building's air conditioning system did constitute a scaffold for purposes of the Act; the court relied on the fact that the stairs in *Vuletich* provided access to a tool storage area separate from the work site, while the ladder in the case before the court provided access to the structure being worked on).) The ladder plaintiff in this case fell from was located within the building which was being erected. The trial court therefore could properly determine the ladder was a device covered by the Act, and the jury could find the ladder's placement and use were a violation of the Act.

■ A new trial is appropriate when the damages awarded are manifestly inadequate, it is clear proved elements of damages have been ignored, or the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6; *Metropolitan Life Insurance Co. v. Nauss* (1992), 226 Ill. App. 3d 1014, 1018, 590 N.E.2d 524, 527.) All three of these elements are present in this case as there was undisputed evidence of plaintiff's medical expenses, lost wages, disability and pain and suffering. Defendant McCurley concedes the jury's award was inadequate and did not bear a reasonable relationship to proved damages. He argues the verdict is an obvious compromise verdict which requires a new trial and, if a new trial is ordered, it must be on all issues and not limited to the issue of plaintiff's damages.

■ A new trial limited to the issue of plaintiff's damages is appropriate when the jury's verdict on the question of liability is amply supported by the evidence; the questions of liability and damages are so separate and distinct that a trial limited to damages is not unfair to the defendant; and the record does not suggest the jury reached a compromise verdict or in some identifiable manner the error which resulted in an award of inadequate damages also affected the verdict on the issue of liability. *Hollis*, 108 Ill. 2d at 408, 485 N.E.2d at 7; *Raithel v. Dustcutter, Inc.* (1994), 261 Ill. App. 3d 904, 906-07, 634 N.E.2d 1163, 1165.

■ In this case, because of the nature of the jury's verdict there is no way—other than an absolute guess—for this court to say whether the jury found liability. The verdict form was filled in by the jury with zero damages for four separate categories of damages despite

uncontradicted evidence plaintiff suffered some damages from the accident. However, to say the jury meant to find for defendant on the issue of liability, we would have to assume the jury ignored the instructions both as to which verdict form to use and that there would be no occasion to consider damages if it found for defendant. Further, defendant did not even argue that the jury made this mistake.

Calhoun seeks a new trial on the third-party liability claim brought against him by McCurley if the court remands the case for a new trial. McCurley argues Calhoun has waived this issue by failing to raise it in a post-trial motion. However, the justification for ordering a new trial is that it is the proper remedy under the test of *Hollis*. Therefore, whether third-party defendant Calhoun is also entitled to a new trial on the third-party liability claim must be determined on the same basis. It is inconsistent for defendant McCurley to argue the jury's finding of liability was incorrect or the result of a compromise, yet contend the apportionment by the jury of the liability thus found should not be subject to retrial. Since we cannot determine with certainty whether the jury even intended to find liability for a violation of the Act, the jury's apportionment of the liability it apparently found is equally suspect.

We suggest the facts surrounding the verdict justified the trial court to immediately find the verdict to be ambiguous, inconsistent, or otherwise defective—then, give the jury an opportunity to correct the verdict or find another one before the jury was discharged and judgment entered. 75B Am. Jur. 2d *Trial* § 1894 (1992).

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded for a new trial on all issues, including the third-party claim.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent and would affirm.

In this case the jury found for plaintiff on liability, but awarded no damages. The majority assumes the jury meant what it said on liability, and therefore its decision on damages was inadequate and must be reversed and remanded (along with the issue of liability). A more reasonable view of the jury's action is that the jury in fact ruled in favor of defendant on liability and simply used the wrong verdict form. (See F. James & G. Hazard, Civil Procedure § 7.21, at

393 n.31 (3d ed. 1985) ("a perversely expressed finding for the defendant").) The instructions and verdict forms in this case involved a third-party defendant and are not easy to follow, but everybody understands the words "damages in the total sum of $0." Why would 12 jurors, after intentionally deciding that defendant was liable, award no damages, where damages clearly existed?

Illinois follows the rule that courts should ignore legalistic reasoning in interpreting the effects of a jury's finding and should instead use practical common sense. (*Kimmel v. Hefner* (1962), 36 Ill. App. 2d 137, 141, 183 N.E.2d 13, 14-15, citing *Royal Indemnity Co. v. Township of Island Lake* (1929), 177 Minn. 408, 409-10, 225 N.W. 291, 292 (verdict for plaintiff awarding no damages "had the same effect as, and was in fact though not in form, a verdict for defendant").) The view that a verdict like this conclusively establishes the liability of the defendant is described as "technical and unrealistic." D. Wilson, *The Motion for New Trial Based on Inadequacy of Damages Awarded,* 39 Neb. L. Rev. 694, 703 (1960).

The majority suggests that in order to interpret the verdict as one for defendant on the issue of liability we would have to assume the jury ignored the instructions: (1) which verdict form to use, and (2) that there would be no occasion to consider damages if the jury decided for defendant on liability. We need not attribute to malice that which may be explained by confusion. The two instructions mentioned were not given together, but were separated by a number of instructions.

The question whom to believe and what weight is to be given all of the evidence is a decision for the trier of fact, whose determinations should not be upset on review unless manifestly erroneous. A trial court's refusal to grant a new trial will be reversed only in those instances where it is affirmatively shown that it clearly abused its discretion. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 455, 603 N.E.2d 508, 513.) In this case it was within the jury's prerogative to find *for defendant,* and the trial court did not abuse its discretion in denying the motion for a new trial. We should affirm.

I agree with the majority that this appeal could have been avoided if the trial court had made further inquiry after the verdict was returned and before the jury was discharged.