DARRELL BUSICK, Plaintiff-Appellant, v. STREATOR TOWNSHIP HIGH SCHOOL DISTRICT No. 40 *et al.*, Defendants (Melotte-Morse, Ltd., Defendant-Appellee).

Third District    No. 3—91—0900

Opinion filed August 21, 1992.—Rehearing denied October 8, 1992.

648

Allison & Kelly, of Bloomington (William A. Allison and Frank M. Brady, of counsel), for appellant.

Myers, Daugherity, Berry & O'Conor, Ltd., of Ottawa (Eugene P. Daugherity, of counsel), for appellee.

Daniel K. Russell, of Johnson, Martin & Russell, P.C., of Princeton, for Streator Township High School District No. 40.

JUSTICE GORMAN delivered the opinion of the court:

Plaintiff brought a slip-and-fall case against several parties, including the architect overseeing the project on which plaintiff was working. The trial court granted summary judgment to the architect, finding that the architect had no duty to the plaintiff. We affirm.

Darrell Busick was employed by Sentry Asbestos Abatement Company (Sentry). In 1988, Sentry was hired by Streator Township High School District No. 40 (Streator) to remove asbestos from the school building. Streator contracted with Melotte-Morse, Ltd. (Melotte), for the latter to provide the architectural services necessary for the removal of the asbestos.

At the school, Sentry had constructed a decontamination unit. This unit was made of plastic sheets taped to the walls. Its purpose was to confine any asbestos dust to that limited area during removal. This particular decontamination unit encompassed a flight of stairs.

As part of the removal process, the asbestos was constantly being wetted down. As a result, water was always present in the decontamination unit. In addition to the water hoses which ran through the decontamination unit, there were also air lines and electrical lines running along the floor of the unit. While working in such a unit, workers had to wear disposable paper clothing and shoes as well as a respirator.

On August 10, 1988, Busick slipped and fell on the stairs while in the decontamination unit. In the area where he fell, the plastic was sagging off the walls. This condition had been noticed earlier in the day by Melotte's project manager, but no action had been taken to correct the situation.

Busick brought this action against several defendants, including Melotte. Melotte was granted summary judgment on the grounds that it owed no duty to plaintiff. Busick now appeals.

The first issue is whether Melotte's contract gave rise to a duty to plaintiff. Plaintiff argues that this case is identical to *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630. The trial court disagreed and found that the contract does not give rise to a duty.

In *Miller*, a school was expanding its gym. As part of that process, several support columns had to be removed. As each beam was removed, the contractor temporarily shored up the roof with steel poles. The temporary columns were inadequate and the roof collapsed. The supreme court held that the architect did owe a duty to the injured workers. The court based this duty on the contract, which specifically gave the architect the right to stop work whenever necessary to insure proper execution of the contract.

This case is distinguishable from *Miller*. There, the unsafe condition was directly related to the architect's area of expertise. The architect was hired to oversee the removal of the roof. The removal was done in an unsafe manner. The architect was in the best position to prevent the accident by supervising the method of shoring employed by the contractor. In addition, the architects in *Miller* had assumed the express contractual responsibility for general supervision of the construction means and techniques.

■ In this case, the accident was not related to the architect's job functions or area of expertise. The architect was not required to control the overall safety of the jobsite. The contract between Sentry and Streator specifically made the contractor (Sentry) responsible for such precautions. The decontamination unit had been designed, constructed and maintained by Sentry. Moreover, the contract between Melotte and Streator also relieved Melotte of responsibility for such precautions and Melotte disavowed any responsibility for general supervision of construction means and techniques.

Here, Melotte had the power to stop "any job activities not performed in accordance with contract specification." The subpar condition alleged by plaintiff is that the visqueen sheeting was sagging in the area where plaintiff fell. The dangerous condition, however, that would be created by the sagging plastic would be that asbestos fibers

might migrate out of the decontamination unit, not that someone might slip on some water which would be present regardless of the condition of the sheeting.

Melotte's obligation under the contract was simply to determine that the asbestos would be removed without causing a health risk. Melotte's project manager was responsible for checking the containment areas and the decontamination units specifically for the narrowly defined purpose of seeing whether or not there was any asbestos release or potential for release. While he had the power to stop work if there was a danger of asbestos release, he was not empowered to stop work for all other potential safety hazards, such as the one which injured plaintiff. Neither the contract nor *Miller* gave rise to a duty owed to Busick on these facts.

Busick next argues that the Illinois Asbestos Abatement Act (Ill. Rev. Stat. 1991, ch. 122, par. 1401 *et seq.*), and the regulations promulgated thereunder, create a private cause of action, or at least define the standard of care owed.

■ We find that the Act does not create a private cause of action for this type of injury. The Act was designed to prevent potential health hazards caused by asbestos in school buildings. (Ill. Rev. Stat. 1991, ch. 122, par. 1402.) There is nothing in the Act which would imply that the legislature intended it to create a cause of action against an architect in a routine slip-and-fall situation.

In *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, the supreme court examined the Asbestos Abatement Act. The court found that the Act does not create an implied cause of action in favor of schools against asbestos suppliers because the schools had adequate tort and contract remedies.

Similarly, here, Busick has available to him potential actions for negligence, Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) claims or worker's compensation, any one of which could adequately compensate him for his injury. Even if the Act were to provide a private cause of action, it would not do so in this case. The purpose of the Act is to regulate the safe removal of asbestos, not to provide a remedy for a worker injured in a jobsite mishap.

The plaintiff was not injured by the asbestos or by anything which would even remotely fall under the Act. A slip and fall is not governed by the Act nor is it an evil which the Act sought to remedy. The Act creates no duty.

Finally, even if we accept plaintiff's claim that he relies on the Act solely to delineate the standard of care, the result is the same.

Since there was no duty in the first place, contractual or otherwise, there can be no corresponding standard of care.

For aforementioned reasons, we affirm the order of the La Salle County circuit court granting summary judgment in favor of Melotte-Morse, Inc.

Affirmed.

BARRY, P.J., and HAASE, J., concur.