ROBERT OSBORNE, Plaintiff-Appellant, v. TIM TARWATER, Indiv. and d/b/a Tarwater Concrete, Defendant-Appellee.

Second District No. 2—92—1470

Opinion filed March 29, 1994.

Paula A. Gomora and Thomas P. Naughton, both of Law Offices of Naughton & Markese, of Joliet, for appellant.

Elizabeth W. Sexton, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

This action was brought pursuant to the Structural Work Act (the Act) (740 ILCS 150/1 *et seq.* (West 1992)). The plaintiff, Robert Osborne, seeks to recover from the defendant, Tim Tarwater, individually and doing business as Tarwater Concrete, for injuries sustained when he walked on a floor and fell through an insulation-covered hole at a residential construction site. The trial court granted the defendant's motion for summary judgment, finding that the insulation-covered hole and surrounding floor were not "scaffolding" or a "support" as defined in the Act.

The plaintiff appeals from the order granting summary judgment. On appeal, the plaintiff argues that the trial court's order granting the defendant's motion for summary judgment should be reversed because the floor that he was walking on was a "support" within the meaning of the Act. We affirm.

The facts in this case are undisputed. Tarwater was a concrete contractor responsible for the pouring of a cement basement floor at

a residential construction site in Darien, Illinois. The plaintiff was employed as a laborer by the rough carpentry subcontractor on the same construction site.

On April 7, 1990, the two-story, single-family dwelling was "roughed in." Within the interior, there was a complete plywood floor with a hole cut in it to accommodate a staircase from the basement to the main floor. On the same date, the plaintiff performed clean-up duties and placed electrical cords for other workers at the construction site. At the time he was injured, the plaintiff was walking across the plywood subflooring on the first floor to a stairway beyond the insulation board. He intended to go to the second floor to pick up electrical cords and tools before he went home.

As the plaintiff walked toward the stairway, he stepped on a hole covered by insulation and fell into the basement. At the time the plaintiff fell through the hole, he was not doing anything other than walking from the window from which he entered the building to the stairway. The plaintiff took 8 to 10 steps from the time he entered the building to the time he fell. He did not plan to do any work in the front entryway area or near the hole. He did not plan to leave through the hole. He was simply walking past the area.

On July 5, 1991, the plaintiff filed his complaint at law naming Thomeoi Ventura as a defendant under the Act. On October 21, 1991, the plaintiff filed his amended complaint at law, alleging violations of the Act. Ventura filed a motion for summary judgment, alleging that the plaintiff used the floor as a pathway and that, therefore, his claim does not fall within the purview of the Act. On January 13, 1992, the trial court denied Ventura's motion for summary judgment.

On April 6, 1992, the plaintiff filed his second amended complaint adding a count II that named Tarwater, individually and doing business as Tarwater Concrete, as defendant alleging the same violations of the Act as alleged in the count against Ventura. On November 2, 1992, the defendant filed his motion for summary judgment, and the hearing on the motion was set for November 23, 1992. The motion was briefed, and the hearing was held on November 23, 1992. In addition, on the day of the hearing, the plaintiff voluntarily dismissed Ventura as a defendant.

On November 24, 1992, the trial court filed its order granting summary judgment for the defendant, holding that "the plaintiff was not working when injured, but was walking to a work area in a different part of the building. Therefore, this Court finds as a matter of law that the insulation covering the hole, and the floor around the hole were not 'scaffolding' or 'supports' under the [A]ct." It is from this order of November 24, 1992, granting the defendant's motion for summary judgment, that the plaintiff appeals.

On appeal, the plaintiff argues that the trial court's order granting the defendant's motion for summary judgment should be reversed because the plywood floor that he was walking on was a "support" within the meaning of the Act. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421.

The Act provides in pertinent part:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." 740 ILCS 150/1 (West 1992).

■ The Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extrahazardous occupations of working in and about construction sites. (*Vuletich*, 117 Ill. 2d at 421-22.) However, the Act was not intended to, nor has it ever been interpreted to, cover all construction activities. (*Vuletich*, 117 Ill. 2d at 422.) Therefore, some things have been held not to be "supports" within the contemplation of the Act. *Vuletich*, 117 Ill. 2d at 422.

> "To sustain a cause of action under the Structural Work Act, a plaintiff must establish that he was: (1) involved in a construction activity, (2) with reference to a structure, (3) using a scaffold or other mechanical device, all of which must fit within the definitions and intended coverage of the Structural Work Act. [Citation.] The plaintiff must then establish that (4) the scaffold or device was unsafe, (5) the unsafe condition caused the plaintiff's injury, (6) the defendant was in charge of the work at the time of the injury, and (7) that the defendant willfully violated the Structural Work Act." (*Ralls v. Village of Glendale Heights* (1992), 233 Ill. App. 3d 147, 152.)

The pending appeal involves only the third element, whether the floor the plaintiff was walking on is within the scope of the Act.

■ Whether a device is a "scaffold," "support," or other "mechanical device" under the Act is a matter of statutory construction and, therefore, is a question of law to be determined by the trial court. (*Vuletich*, 117 Ill. 2d at 421.) Illinois courts utilize a three-pronged

analysis to determine whether a particular device qualifies as a "support" within the meaning of the Act. (*Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 296-97.) First, courts determine what the intended use of the device in question was at the time of the injury. (*Ashley*, 114 Ill. App. 3d at 297.) Second, courts determine whether there is a connection between the injury and the hazardous nature of the device in question. (*Ashley*, 114 Ill. App. 3d at 297.) Third, courts determine what was the element of danger involved in the use of the support and whether this was the danger which the legislature intended to eliminate. *Ashley*, 114 Ill. App. 3d at 298.

The defendants rely on *Vuletich*, wherein our supreme court recognized the distinction between a support, specifically used to accomplish some construction activity, and a mere pathway. (*Vuletich*, 117 Ill. 2d at 422-23.) The court in *Vuletich* affirmed summary judgment in favor of a defendant in a case under the Act on the issue of whether a stairway was a "support." (*Vuletich*, 117 Ill. 2d at 425.) Vuletich, a laborer, ascended a set of temporary wooden steps to a trailer where he was returning a shovel and broom which he had used to clean an area where workers were repairing a furnace. (*Vuletich*, 117 Ill. 2d at 420.) The plaintiff contended that the stairs were used as a "support" because the workers used the stairs to gain access to their tools. (*Vuletich*, 117 Ill. 2d at 422.) Our supreme court rejected Vuletich's argument, noting that the use of the device, not the nature of the work being performed, is dispositive. *Vuletich*, 117 Ill. 2d at 422-25.

In *Vuletich*, the court stated:

"In *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, the court stated, '[A] floor is not a scaffold when it is being used merely as a walkway [citations], but if a worker relies on a partially completed floor for support as a working platform, he may recover.' (101 Ill. App. 3d 1085, 1093.) Also, in *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, the court held that the floor of the building in question was not being used as a working platform at the time of the plaintiff's injury and stated, 'Plaintiff did not rely on the floor as a support while working on the building; he merely utilized it as a path to reach the stairway and other parts of the structure. Simply stated, the floor was being used as a floor, the purpose for which it was designed.' (94 Ill. App. 3d 660, 664.) We agree with the holdings of these cases. Applying this reasoning to the case before us, we find that the stairs in question did not constitute a support as that term is used in the Act. The stairs were but a pathway providing ingress and egress to and from the trailer wherein tools were stored. If the stairs had provided support for

the plaintiff in the performance of some hazardous activity, or if he had used them as a working platform, then, as noted in the cases last cited, a different situation might prevail." *Vuletich*, 117 Ill. 2d at 423.

The plaintiff relies on *Heino v. Mellon Stuart Co.* (1991), 222 Ill. App. 3d 147, in support of his contention that the floor was a "support." *Heino* is distinguishable from the present case. In *Heino*, the plaintiff, a laborer, was cleaning debris, concrete jacks, wood, and nails left by other workers so that concrete block could be brought to the area and set up for construction of a wall. (*Heino*, 222 Ill. App. 3d at 148-49.) At the time the plaintiff was injured, he was lifting a large piece of plywood and stepping back to throw it on top of a pile of debris he was forming. (*Heino*, 222 Ill. App. 3d at 149.) When Heino stepped backward a piece of the concrete flooring he was standing on broke, and he fell through to the floor below. *Heino*, 222 Ill. App. 3d at 149.

Unlike the plaintiff in the present case, the plaintiff in *Heino* was using the floor as a repository for construction waste, at the time of the fall (*Heino*, 222 Ill. App. 3d at 149). The floor was not merely being used as a pathway. (*Heino*, 222 Ill. App. 3d at 149.) In holding that the floor was a "support," this court, in *Heino*, distinguished the fact situation from those set forth in *Gannon v. Commonwealth Edison Co.* (1989), 182 Ill. App. 3d 228, and *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, cases which involve facts similar to those at issue in the present case. *Heino*, 222 Ill. App. 3d at 152.

In *Gannon*, the plaintiff was a pipe fitter who was carrying beams from one area to another for stockpiling. (*Gannon*, 182 Ill. App. 3d at 229-30.) As Gannon was carrying the beam, he slipped on a greasy substance on the floor and fell. (*Gannon*, 182 Ill. App. 3d at 230.) Even though the plaintiff was actually carrying construction materials at the time of his injury, the court found that he was using the floor as a pathway and not as a support for construction work. *Gannon*, 182 Ill. App. 3d at 233.

Similarly, in *Tenenbaum*, the court held that a labor foreman, injured when he fell through a hole in the floor, was not on a "scaffold" or "platform." (*Tenenbaum*, 60 Ill. 2d at 370.) In *Tenenbaum*, the plaintiff was inspecting a portion of an underground water-treatment plant which was under construction. (*Tenenbaum*, 60 Ill. 2d at 367.) As Tenenbaum walked on a floor, he noted debris and working materials which had been left by other workers. (*Tenenbaum*, 60 Ill. 2d at 367.) There was no lighting in the area, and the plaintiff used a flashlight to conduct his inspection. (*Tenenbaum*, 60 Ill. 2d at 367.) As he approached a baffle chamber, Tenenbaum

dropped his flashlight, tripped, and fell 17 to 18 feet through an unbarricaded hole. (*Tenenbaum*, 60 Ill. 2d at 367.) In reaching its decision denying the plaintiff coverage under section 1 of the Act, the *Tenenbaum* court noted that the floor was not being used in any manner as a working platform or a scaffold for the purpose of completing construction. (*Tenenbaum*, 60 Ill. 2d at 370.) It was being used as a floor. *Tenenbaum*, 60 Ill. 2d at 370.

●3 In the present case, the plaintiff admitted in his deposition that he had no intention of performing any construction work in the area where he fell and that he was merely walking through the area at the time of the accident. We conclude that the plaintiff was using the floor as a pathway and not as a "support" within the meaning of the Act. (See *Vuletich*, 117 Ill. 2d at 423.) Because we have found that the floor upon which the plaintiff was walking was not a "support" within the meaning of the Act, we find that the circuit court properly granted Tarwater's motion for summary judgment. Accordingly, we need not consider the second and third inquiries under the *Ashley* test.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and COLWELL, J., concur.