BRYAN BALDWIN, Plaintiff-Appellant, v. TWIN RIVERS CLUB, a/k/a and d/b/a Ottawa Lions Club, Inc., Defendant-Appellee.

Third District   No. 3—93—0716

Opinion filed June 8, 1994.—Rehearing denied July 11, 1994.

Carl W. Telford, of Law Offices of Carl Wm. Telford, Ltd., of La Salle (Matthew J. Burkhart, of counsel), for appellant.

Jill W. Broderick, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (T. Donald Henson, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Bryan Baldwin, was injured in a fall on the premises of the defendant, the Twin Rivers Club, a not-for-profit corporation doing business as and also known as the Ottawa Lions Club. He brought a two-count complaint alleging negligence and violations of the Structural Work Act (740 ILCS 150/1 *et seq.* (West

1992)). The circuit court of La Salle County granted the defendant's motion for summary judgment on the Structural Work Act claim and the cause proceeded to trial on the negligence count. Subsequently, the jury returned a verdict in favor of the defendant. The plaintiff appeals from both the circuit court's decision to grant summary judgment and the jury's verdict. We affirm.

By way of background, the record shows that the Ottawa Lions Club has been in existence since the 1930's. During much of that time the Lions held there meetings in various locations, including local restaurants. In due course, it was decided that a permanent meetinghouse should be built and a building fund was established. In the early 1980's, land in the northeastern part of Ottawa was donated to the Lions. A building contractor was engaged to construct the basic one-story structure or shell. Lions Club members and others were to finish the interior—flooring, drywall, painting, etc. This phase of the project was completed either through further donations of material or as funds allowed. The work was done through the volunteer efforts of the members.

In 1983, on advice of counsel, members of the Lions Club formed the Twin Rivers Club, a not-for-profit corporation. The basic purpose of this corporation was to hold title to the real estate and the clubhouse built thereon. This was done so that if the local Ottawa Lions Club were ever to disband, ownership of the property would not revert to the International Lions organization. In other words, the property would remain in local hands for the benefit of the local community.

The record shows the furnace unit for the clubhouse was housed in the unfinished attic of the building. This attic space was accessible by way of a pull-down staircase which closed up into the ceiling near the eastern outside wall of the building. In the attic, loose planks were laid across the rafters in a rather haphazard manner. The rafters ran in an east/west direction. Items such as candy and Christmas decorations were stored in the attic on these planks.

The plaintiff joined the Lions Club in 1987. He also became a member of the Twin Rivers Club building committee. During the summer of 1988, an air conditioning unit was donated to the Lions. Because he had experience in heating and air conditioning work, the plaintiff either volunteered or was asked if he would volunteer to install the unit. The work entailed certain modifications to the furnace unit in the attic. Building committee chairman Ron Laatz agreed to assist the plaintiff. Laatz had no experience with such installations.

On September 7, 1988, the plaintiff and Laatz worked on the

modifications of the furnace unit. The two men climbed in and out of the attic several times during the course of the work. One of those trips required them to move a coil in excess of 50 pounds up into the attic and over to the furnace unit.

To enter the attic, the men climbed the steps facing in an easterly direction and entered the attic through the opening formed when the pull-down staircase unit was pulled down from the ceiling. On reaching the top of the steps, they had to turn because the east slope of the roof met the eastern wall of the building near the head of the steps. They had to walk in a westerly direction on the boards which formed the framing for the pull-down staircase and the adjacent east/west running rafters. The opening was approximately five feet in length measured from east to west. On reaching the western edge of this frame, they had to maneuver across an area which extended approximately $40\frac{1}{2}$ inches to the west of the staircase opening and was approximately 20 inches wide. There were no permanent wooden rafters or beams within this area, only the plasterboard and drop-ceiling tile forming the first-floor ceiling below and insulation. The furnace unit was approximately 8 to 10 feet north of the staircase opening.

In his deposition, attached to the motion for summary judgment, the plaintiff maintained that two wooden planks extended in an east/west direction across the $40\frac{1}{2}$-inch expanse. At the subsequent trial, the plaintiff continued to assert that at least one plank was arranged in an east/west direction in this area. Witnesses for the defendant asserted that none of the planks lay in an east/west direction; rather, they were laid north/south—perpendicular to the east/west running rafters.

In any event, at one point in the work, the plaintiff went downstairs to retrieve duct tape and nails. He came back up the steps and maneuvered around the staircase opening. As he was crossing the area just west of the opening he stepped on the plank (or planks) which he claimed spanned the $40\frac{1}{2}$-inch area. The plank broke and the plaintiff fell through the plasterboard and drop-tile ceiling to the floor below.

At the time of the incident, Laatz was behind the furnace unit. He did not see the plaintiff fall, although he heard a noise and the plaintiff yell. He called out to the plaintiff, who stated that he had fallen and that he needed help. The plaintiff was taken to the hospital and hospitalized for a number of days. He suffered back injuries and recurring bladder problems he claimed arose from this incident.

In his deposition, the plaintiff testified that the manner in which he did the installation of the unit that day was up to him. He was

not taking orders from anyone, nor had anyone given him instructions on the installation. The plaintiff brought the tools he needed to do the work. Ron Laatz was there simply to lend a hand since he had no experience in this type of work. The plaintiff told Laatz what to do as they proceeded with the installation.

As indicated above, prior to trial, the defendant moved for summary judgment on the plaintiff's Structural Work Act claim. In the motion, the defendant asserted the plank which broke was a pathway and not a "support" within the meaning of the Act. The defendant further asserted that the plaintiff was acting as an independent contractor at the time of the incident and thus was not a member of the class of persons intended to be protected by the Act.

Following a hearing on November 19, 1992, the circuit court granted the defendant's motion. Relying on *Vuletich v. U.S. Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223, the court found that at the time of the incident the plank which broke was being used as a walkway, and therefore the Act did not apply to this occurrence. Second, the court found there was no genuine issue of material fact as to whether the defendant was in charge of the work performed by the plaintiff. The court held that ownership of the premises, without more, did not automatically render the defendant in charge for purposes of the Structural Work Act.

The cause proceeded to a jury trial on the plaintiff's negligence claim. At trial, Ron Laatz testified the work to finish the interior of the building was done on a volunteer basis and often organized in an *ad hoc* manner. According to Laatz, the plaintiff knew the air conditioning unit had been donated and he agreed to install the unit for the Club. Laatz agreed to assist him. Laatz testified the plaintiff was in charge of the work on the day of the incident because he was familiar with the type of work and possessed the tools and equipment to complete the task. Laatz further testified he and the plaintiff passed through the area where the plaintiff fell several times that day before the plaintiff fell through the ceiling.

Laatz noticed boards in the area; however, he said they were laid north and south and not east and west. He was careful not to step on the portion of the boards between the rafters since the boards were only one inch thick. He stepped on the boards only in places directly supported by a rafter. Laatz stated it was not necessary to warn the plaintiff because the condition was obvious, and the plaintiff had been back and forth through the area many times that day without incident.

At trial, the plaintiff testified he had attended technical school for heating, air conditioning and refrigeration. Prior to the date of

the incident, the plaintiff had been in the attic to retrieve candy and other supplies. He had also been in the attic several times prior to the date of the incident in order to take measurements for the air conditioner. The plaintiff stated he either was asked to do the installation or he volunteered. During cross-examination, it was pointed out that in his earlier deposition he had stated he did not think the plank which broke was unsafe. He had also testified that his weight on the date of the incident was 222 pounds.

The jury found for the defendant. In his post-trial motion, the plaintiff requested, *inter alia*, that the court reconsider its decision to grant summary judgment on his Structural Work Act claim. The motion was denied.

On appeal, the plaintiff contends the trial court erred in granting summary judgment.

Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Vuletich v. U.S. Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223.) The evidence in the record must be construed strongly against the movant, and although the party opposing summary judgment need not prove his case at this preliminary stage, he must present some factual basis that would arguably entitle him to a judgment under the applicable law. (*Ralls v. Village of Glendale Heights* (1992), 233 Ill. App. 3d 147, 598 N.E.2d 337.) Because of the extreme nature of summary judgment, a court must exercise extraordinary diligence in its review of the record so as not to preempt a party's right to trial by jury or its right to fully present the factual basis for its claim. *O'Brien v. Rogers* (1990), 198 Ill. App. 3d 341, 555 N.E.2d 1005.

In the instant case, the circuit court found the plank which broke was being used as a pathway by the plaintiff at the time of the incident and not as a "support" within the meaning of the Structural Work Act.

In pertinent part the Act provides, "All scaffolds, ***, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, *** of any *** building, *** shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***." (740 ILCS 150/1 (West 1992).) The question of whether a certain device is governed by the Structural Work Act is a matter of statutory construction and therefore a

question of law for the court to determine. *Vuletich v. U.S. Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223.

As expressed in *Vuletich*, it is the use of the device in question, not the nature of the work performed, that is dispositive; when attempting to determine whether a particular device is a support, the court must ascertain the intended use of the device in question at the time of the injury. *Vuletich v. U.S. Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223.

In the instant case, there is no genuine factual dispute as to the type of device in question—a plank spanning an area between wooden beams or rafters. Before the circuit court, and again in his argument to this court, the plaintiff contends he utilized this plank as a support while he worked on the furnace/air conditioning unit. The record shows the unit was some 8 to 10 feet north of the area in which the plaintiff fell. The plaintiff has continuously maintained that the plank was laid in an east/west direction. Thus, according to the plaintiff's testimony, the plank was at least 8 to 10 feet from the unit. He therefore could not have stood on the plank while working on the unit itself. Rather, the plaintiff must be arguing in the more general sense that because he had to cross this area to reach the furnace unit, the plank was a support for purposes of the Act. We disagree.

■ Viewing all the circumstances involved, and the way the plaintiff was using the plank at the time of his injury, we find the board served as a mere pathway and not as a support within the meaning of the Act. The plaintiff was not standing on the plank while engaged in working on the furnace modifications; he was using it as a pathway to the work area. We note there were other rafters and boards in the area which the plaintiff could have utilized (and probably did use) in reaching the work area. None of the evidence subsequently presented at trial negates this finding. Thus the Act did not apply to this incident. We therefore find the circuit court correctly granted the defendant's motion for summary judgment.

■ Having found the circuit court correctly determined the plank was a mere pathway and that the Act did not apply, we do not believe the issue of whether the defendant was in charge of the work requires extensive discussion. We note in passing that in our view, under the facts of this case, the defendant was not in charge for purposes of the Structural Work Act. See generally *Cutuk v. Hayes/Gallardo, Inc.* (1992), 151 Ill. 2d 314, 602 N.E.2d 834 (Structural Work Act intended to place full responsibility on the "person in charge"—generally a question of fact).

The plaintiff also contends the jury verdict in favor of the defendant was against the manifest weight of the evidence.

A verdict is considered to be against the manifest weight of the evidence only when the jury's verdict is palpably erroneous or appears to be unreasonable, arbitrary and not based on the evidence. (*Thurmond v. Monroe* (1992), 235 Ill. App. 3d 281, 601 N.E.2d 1048.) In determining whether a jury's verdict is against the manifest weight of the evidence, the inquiry on appeal is whether the result reached is reasonable on the facts and evidence, and not whether other conclusions are possible. *J.F. Equipment, Inc. v. Owatonna Manufacturing Co.* (1986), 143 Ill. App. 3d 208, 494 N.E.2d 516.

■ After reviewing the record thoroughly, this court cannot say that the jury's verdict in favor of the defendant was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER, P.J., and McCUSKEY, J., concur.