THOMAS STEURI, Plaintiff-Appellant, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA *et al.*, Defendants-Appellees (Prudential Insurance Company of America, Third-Party Plaintiff; Midwest Asbestos Removal Service, Inc., Third-Party Defendant).

First District (1st Division) No. 1—93—4575

Opinion filed July 15, 1996.

Shefler & Berger, Ltd. (Alan J. Shefler, of counsel), and David A. Novoselsky & Associates (David A. Novoselsky and Linda A. Bryceland, of counsel), both of Chicago, for appellant.

Baker & McKenzie, of Chicago (Michael A. Pollard and Stephen R. Ayres, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Thomas Steuri, appeals from two orders of the circuit court of Cook County entered September 10, 1993, and November 18, 1993, respectively: (1) granting summary judgment in favor of defendant, Prudential Insurance Company of America (Prudential) on plaintiff's Structural Work Act and negligence claims; and (2) denying plaintiff's motion for reconsideration and striking certain paragraphs of an affidavit attached to plaintiff's motion for reconsideration. For the following reasons, we affirm.

The record reveals the following relevant facts. On June 2, 1988, plaintiff filed a two-count complaint against Prudential.[1] In count I, plaintiff stated a claim pursuant to the Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69 (now 740 ILCS 150/1 through 9 (West 1994)), alleging that on June 23, 1986, he slipped and fell on a platform being used in connection with the removal of asbestos from a building located at 130 East Randolph Street in Chicago, causing him to sustain severe and permanent external and internal injuries. In count II, plaintiff alleged negligence by Prudential in the erection, construction, placement or operation of the platform within the building upon which he fell.[2]

On April 21, 1993, Prudential filed two motions for summary judgment. In the first motion, Prudential argued that plaintiff's claim must fail under the Act because plaintiff's deposition testimony revealed that plaintiff was not injured while he was performing his work.

Prudential attached to its motion the transcript of plaintiff's deposition. Therein, plaintiff testified that he slipped and fell after he stepped down on a platform leading from the shower room into the "dirty room." Plaintiff testified that between the shower room and the dirty room was an area through which he had to pass to

---

[1]Plaintiff also initially named Prudential Plaza Association (Plaza) as a defendant. Plaza filed a motion for judgment on December 20, 1990, arguing that it did not have an ownership interest in the property in question at the time of plaintiff's injury. The trial court entered an order granting Plaza's motion on October 16, 1990. Plaintiff does not appeal this order of the trial court.

[2]Plaintiff was employed as a construction worker by Midwest Asbestos Removal Service (Midwest). Defendant filed a third-party complaint against Midwest on June 30, 1991. In a separate order entered on November 18, 1993, the third-party complaint against Midwest was dismissed without prejudice.

get to the actual work area. This passageway was divided into three chambers: (1) a clean area; (2) a shower area; and (3) a dirty area. On the other side of this three-chambered passageway was the area in which the actual asbestos removal work was done. Thus, Prudential argued that it was undisputed that at the time plaintiff tripped and fell, he: (1) was not in the course of performing any sort of extrahazardous work; and (2) the dirty room was not a support or scaffold within the meaning of the Act. Prudential argued that it was entitled to summary judgment on count I of plaintiff's complaint because plaintiff's activity fell outside the intended purpose of the Act.

On August 27, 1993, plaintiff filed two responses to Prudential's "Motion For Summary Judgment I" (response I) and "Motion for Summary Judgment II" (response II). Plaintiff argued that his injury was covered by the Act and that Prudential supervised and controlled the work, such that it was "in charge" within the meaning of the Act.

The exhibits and attachments to plaintiff's responses I and II reveal that Prudential entered into a contract with Midwest for the removal of asbestos on the fifth-floor annex (annex) of the Prudential Plaza Building. Mark Bewly, Midwest's project foreman, testified that all of the openings into and out of the annex were covered with heavy sheets of visquene[3] plastic. The three decontamination chambers (as described above) were separated from each other by an airlock. The decontamination chamber consisted of a wooden frame, with visquene plastic walls and ceiling, and an elevated plywood platform floor for the shower. The decontamination area was constructed by Midwest employees and was located entirely within the cordoned-off work area.

In order to enter the work area, the workers had to pass through the decontamination chamber. Workers entered through the "clean room," where they changed from their street clothes into specialized paper/plastic "tyvek" suits, consisting of hoods, full body and foot coverings.

From the "clean room," workers passed through an airlock, consisting of two visquene plastic door flaps, into the shower room. The shower room was raised higher than the other chambers for drainage purposes. Workers walked through the shower room, through another airlock, and then stepped down into the "dirty room." Finally, workers passed through the "dirty room," through a final airlock, and entered the actual work area. Whenever the workers left the work area, they had to pass through the decontamination three-chamber area, showering before entering the clean room.

---

[3]Also spelled "Visqueen" in the record.

Bewly testified that he was not present at the time plaintiff fell, but he filled out accident reports regarding the accident. The accident report stated that plaintiff was entering the work area through the shower decontamination unit and was stepping down from the shower platform when he slipped and fell on his back, hitting his head on the concrete floor.

Bewly stated that Midwest held safety meetings, wherein the work force and the superintendent discussed work site safety concerns. Midwest owned all of the equipment in the containment area. Only Midwest superiors could instruct Bewly as to how he and his crew performed their jobs.

In his own deposition, plaintiff testified that he fell as he stepped down from the shower room, and into the "dirty room," on his return from lunch.

William Stewart, a Midwest employee, testified that he witnessed plaintiff's accident. Stewart stated that plaintiff pulled back the plastic airlock door, and as he was stepping down from the dirty room into the actual work area, plaintiff fell back and hit his head.

Stewart assisted in setting up the containment rooms. Stewart stated that he took his orders from Midwest employees Mark Bewly, Rick Helwig, and Dick Gage, the superintendent. Stewart saw engineers on the site and thought they were employed by Prudential because they wore Prudential "tags," but he never took any orders from them, nor spoke with them personally.

Priscilla Ching testified in a deposition that she worked for the Prudential Realty Group as an associate investment manager at the time of the incident. Ching was responsible for relocating tenants out of the annex during the renovation of the building. As the project progressed, Ching worked with the architects and the contractors to improve the renovation design, occasionally walking through the area. Later, Ching was appointed to oversee the asbestos abatement project. As such, she arranged weekly status meetings on the progression of the project, which included representatives of Midwest, Clayton Environmental, an engineering firm, and Rubloff, the building manager. Ching's primary concern was for the safety of the tenants, *i.e.*, where warning signs should be posted. Ching led the meetings and took minutes. Her minutes reflect that she made occasional visual observations of the project and noted that Midwest complied with precautionary measures suggested at the meetings.

Plaintiff retained Morley Brickman as a safety expert. In response to Rule 220 interrogatories (134 Ill. 2d R. 220), Brickman stated that the passage from the shower room to the dirty room was unsafe because: no handrail was installed; risers were too high;

amount of steps was inadequate; no platform was provided after exiting the door from the shower to the dirty room; and water from the shower was tracked through doors leading from the shower to the dirty room, causing an extremely slippery condition.

John Zaluski, Prudential's director of architecture, testified that he worked for a subsidiary of Prudential, the Realty Group. Zaluski's duties did not include overseeing job safety. In May 1986, prior to any asbestos removal work, Zaluski participated in a "walk through" of the asbestos removal area for observation purposes. Zaluski noticed a large opening in the wall caused by the removal of a window, and he made a general statement that the condition was dangerous and needed to conform with OSHA requirements. Zaluski did not give any specific instructions to Midwest about what to do about the opening.

The contract between Prudential and Midwest provided that the contractor was Midwest and that Midwest was liable for any injury:

> "arising from the agents or employees, of any scaffold, hoist, crane, ladder, support, temporary stairwell or other mechanical contrivance erected or constructed by any person or for any other kind of equipment owned, furnished or rented which are subject to the obligations under the Illinois Structural Work Act, commonly known as 'The Scaffold Act.' "

The contract also provided that Midwest was responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work. The contract designated Prudential employee Brian Flanagan as project manager for the construction of the project, but delegated a substantial portion of Flanagan's responsibility to Rick Gage, Midwest's general superintendent. The contract further revealed that Midwest was responsible for instructing workers as to safety at the work site.

On September 10, 1993, a hearing commenced on Prudential's summary judgment motions. At the conclusion of the hearing, the trial court found that Prudential was not in charge of the work and therefore owed plaintiff no duty under the Act or in terms of negligence (count II). Relying on *Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 512 N.E.2d 1223 (1987), the trial court also found that the activity was not a structure covered by the Act, stating that the shower floor was not used as a support, but rather as means of ingress and egress. The trial court granted summary judgment in favor of Prudential.

On October 8, 1993, plaintiff filed a motion for reconsideration of the trial court's order of September 10. To this motion, plaintiff attached the affidavits of William Steuri and Ronald Helwig. In re-

sponse, Prudential filed a motion to strike the affidavits, arguing that they were untimely pursuant to Supreme Court Rule 191. Prudential further argued that the new material contained in the affidavits was conclusory and therefore inadmissible.

On November 18, 1993, the trial court denied plaintiff's motion to reconsider and struck paragraphs 7, 8, 9, and 10 of Helwig's affidavit as conclusory. Plaintiff filed his notice of appeal of the trial court's orders of September 10 and November 18, 1993, on December 15, 1993.

Initially, plaintiff contends that the trial court erred in entering summary judgment in favor of Prudential on count I of his complaint under the Structural Work Act. Plaintiff argues that the trial court erred in determining that the platform was not a structure within the parameters of the Act and that Prudential was not in charge of the work site.

Summary judgment should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). Although "the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.]" *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986).

■ In pertinent part the Act provides:

"All scaffolds, *** supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, *** of any *** building *** shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***." 740 ILCS 150/1 (West 1994).

The question of whether a certain device is governed by the Act is a matter of statutory construction and therefore a question of law for the court to determine. *Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 512 N.E.2d 1223 (1987); *Baldwin v. Twin Rivers Club*, 262 Ill. App. 3d 516, 636 N.E.2d 1024 (1994).

■ In *Vuletich*, our supreme court stated that the Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extrahazardous occupations of working in and about construction, repairing, alteration or removal of buildings,

bridges, viaducts, and other structures. *Vuletich*, 117 Ill. 2d at 422, citing *McNellis v. Combustion Engineering, Inc.*, 58 Ill. 2d 146, 151, 317 N.E.2d 573 (1974). However, the court further stated that the Act was not intended to, nor has it ever been interpreted to, cover any and all construction activities. *Crafton v. Lester B. Knight & Associates, Inc.*, 46 Ill. 2d 533, 536, 263 N.E.2d 817 (1970). Therefore, although the Act is to be liberally construed, certain things have been held not to be "supports" within the contemplation of the Act. See *Herman v. Swisher*, 115 Ill. App. 3d 179, 181, 450 N.E.2d 28 (1983).

As expressed in *Vuletich*, it is the use of the device in question, not the nature of the work performed, that is dispositive; when attempting to determine whether a particular device is a support, the court must ascertain the intended use of the device in question at the time of the injury. *Vuletich*, 117 Ill. 2d at 422. The *Vuletich* court held that stairs to a storage trailer containing cleaning equipment for a furnace were not a structure within the Act. At the time the plaintiff Vuletich used the stairs, he was returning a broom and shovel to the trailer after cleaning the furnace. The court concluded that the stairs were not involved in any hazardous work activity. *Vuletich*, 117 Ill. 2d at 424. Thus, *Vuletich* limits coverage of the Act to devices used for support while performing work, not for devices used as a pathway for ingress and egress.

■ In the present case, there is no genuine factual dispute as to the type of device in question: a wooden platform floor in the shower room, in between the "clean room" and the "dirty room." The deposition testimony is uncontested that the shower room is not adjacent to the actual work area and that construction workers must pass through the shower room when entering either the "dirty room" or the "clean room." The "dirty room" is adjacent to the work area. There is further no dispute that plaintiff fell as he exited the shower room, and entered the "dirty room," on his way to the actual work area after his lunch break.

Our courts have determined that similar platforms used as pathways are not supports within the meaning of the Act. See, *e.g.*, *Osborne v. Tarwater*, 259 Ill. App. 3d 703, 631 N.E.2d 879 (1994) (plywood subflooring of a house under construction was not a support where plaintiff was walking across it at the time of his injury); *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 598 N.E.2d 337 (1992) (earthen incline leading up to the entrance six to eight feet above ground not a structure where plaintiff used such as a pathway into the entrance of the building); *Miller v. Archer-Daniels-Midland Co.*, 261 Ill. App. 3d 872, 634 N.E.2d 1108 (1994) (catwalk not a structure where, at the time of his injury, plaintiff used such to go to

lunch); *Gannon v. Commonwealth Edison Co.*, 182 Ill. App. 3d 228, 537 N.E.2d 994 (1989) (floor not a support when plaintiff slipped and fell, even though he was using the floor as a pathway to transport construction materials); *Baldwin v. Twin Rivers Club*, 262 Ill. App. 3d 516, 636 N.E.2d 1024 (1994) (plank spanning rafters was not a support where plaintiff used plank as a pathway and plank was 8 to 10 feet away from the work area).

Thus, the shower floor does not constitute a support within the meaning of the Act because of its intended use as a walkway, providing ingress and egress to the room which accesses the work site.

Plaintiff further contends that the trial court erred in determining that Prudential was not "in charge" of the work site.

■ There is no all-encompassing test to guide the courts in deciding whether a particular defendant had charge of the work as that concept is understood under the Act. (See *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 211 N.E.2d 247 (1965); *Simmons v. Union Electric Co.*, 104 Ill. 2d 444, 473 N.E.2d 946 (1984). Courts have listed various factors that may bear on the decision in a particular case, including whether the defendant (1) supervised and controlled the work; (2) retained the right to supervise and control; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had the authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the jobsite; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety by correcting unsafe habits and equipment deficiencies. *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 578 N.E.2d 1113 (1991). These factors may be viewed as focussing on two hallmarks of being "in charge": (1) actual or clearly implied control and supervision over the construction; and (2) responsibility for job safety.

While an owner of property may exercise such control and supervision over construction as to make him liable to an injured party under the Act, the mere fact of ownership has little to do with which party or parties actually "have charge" of it. See *O'Rourke v. Oehler*, 187 Ill. App. 3d 572, 543 N.E.2d 546 (1989); *Winter v. Davis*, 85 Ill. App. 3d 912, 407 N.E.2d 696 (1980).

■ A defendant cannot be held responsible for injuries sustained at the jobsite unless there is a "showing that he had some direct connection with the construction operations." *McGovern v. Standish*, 65 Ill. 2d 54, 67, 357 N.E.2d 1134 (1976) (architect was not liable where his function was limited to general overseeing); *cf. Emberton v. State Farm Mutual Automobile Insurance Co.*, 71 Ill. 2d 111, 373 N.E.2d

1348 (1978) (architectural firm with authority to stop work was found to be in charge where its project representative was present on jobsite continuously for more than three years).

The present case is comparable to *Busick v. Streator Township High School District No. 40*, 234 Ill. App. 3d 647, 600 N.E.2d 46 (1992). There, the plaintiff brought a slip-and-fall case against the architect overseeing an asbestos removal project in a school building. The plaintiff was employed by an asbestos abatement company that constructed a decontamination unit within the building made of plastic sheets taped to the walls. Water was always present in the decontamination unit, because the asbestos was constantly being wetted down. The plaintiff slipped and fell on a flight of stairs within the decontamination unit due to the known fact that the plastic was sagging off the walls. This court determined that the architect was not in control of the overall safety of the jobsite. Rather, the asbestos removal company was responsible for all such safety precautions by contract. In addition, the decontamination unit had been designed, constructed and maintained by the asbestos removal company. *Busick*, 234 Ill. App. 3d at 649.

■ In the present case, the record shows that Prudential did not supervise and control the asbestos abatement and the safety precautions connected with the work. The contract specifically delegated this responsibility to Midwest. Mark Bewly, the Midwest foreman, testified the decontamination unit was constructed by Midwest employees and that no one other than his Midwest superiors had the authority to dictate how the abatement work should be done. Prudential Realty Group employee John Zaluski had no authority for supervising safety precautions. Zaluski walked through the annex once prior to commencement of the asbestos removal project and commented that a large hole in the wall was dangerous. Prudential employee Priscilla Ching essentially held status meetings to learn about the progress of the work and ensure that building tenants were protected from danger.

The record therefore shows that plaintiff failed to establish either that the platform was subject to the provisions of the Act, or that Prudential was "in charge" of the jobsite within the meaning of the Act. Therefore, the trial court properly entered summary judgment in favor of Prudential on count I of plaintiff's complaint.

Next, plaintiff contends that the trial court erred in granting summary judgment in favor of Prudential on count II of his complaint for negligence, and in finding that Prudential owed no duty to him. Plaintiff alleged that Prudential failed to properly inspect, operate, manage, maintain, control and supervise his work area, and failed to warn and provide safety precautions for his work.

The existence of a duty is a question of law and must be decided in the first instance. *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540 (1975). If the trial court determines that no duty existed, then summary judgment is proper. *Puttman v. May Excavating Co.*, 118 Ill. 2d 107, 112, 514 N.E.2d 188, 192 (1987).

■ Where an employee of an independent contractor bases a negligence claim against an owner on a failure to exercise proper control, a duty only arises where the owner has retained control for the work. *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916, 923-24, 627 N.E.2d 1265 (1994). The contract determines respective liability. *Busick v. Streator Township High School District No. 40*, 234 Ill. App. 3d 647, 600 N.E.2d 46 (1992).

■ In the present case, the record shows that Prudential delegated responsibility for the details of the work to Midwest. The contract provides that Midwest shall supervise and direct the work and "shall be solely responsible for all construction means, methods, techniques, sequences, and procedures." The contract further assigned responsibility for all safety precautions at the jobsite to Midwest, including protective clothing and respirators, and instructions for entering and exiting the shower room. Therefore, the trial court properly entered summary judgment in favor of Prudential on count II of plaintiff's complaint for negligence.

■ Finally, plaintiff contends that the trial court erred in denying his motion for reconsideration and in striking certain paragraphs of Helwig's affidavit attached to the motion. Prudential filed a motion to strike the affidavit pursuant to Supreme Court Rule 191(a). 134 Ill. 2d R. 191(a).

Rule 191(a) provides *inter alia*, that affidavits submitted in support of and opposition to a motion for summary judgment "shall be made on the personal knowledge of the affiants; *** [and] shall not consist of conclusions but of facts admissible in evidence." 134 Ill. 2d R. 191(a).

In paragraphs 7, 8, 9 and 10, of his affidavit, Helwig made the following statements: Prudential retained control of the asbestos abatement project; Ching was Prudential's representative; Prudential employees conducted inspections and walk-throughs of the contained areas; Ching conducted such a walk-through and inspection of the fifth-floor area before the asbestos removal began; and Ching had the authority to and did order changes regarding the decontamination unit. The trial court struck these portions of Helwig's affidavit as conclusory.

Helwig states no facts in his affidavit in support of the above statements. Therefore, plaintiff has failed to support his contention

that Helwig's statements were based on personal knowledge and were not conclusory. We conclude that the trial court properly denied plaintiff's motion for reconsideration and properly struck these paragraphs of Helwig's affidavit.

For all of the above-stated reasons, we therefore affirm the judgment of the trial court.

Affirmed.

BUCKLEY and BRADEN, JJ., concur.