Robert E. **COOPER** and **Mariann Pogge, Trustee of the Bankruptcy Estate of Robert E. Cooper, Plaintiffs–Appellants,**

v.

**WAL-MART STORES, INC., Defendant–Appellee.**

No. 96–1475.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1996.

Decided Feb. 11, 1997.

---

Richard L. Steagall (argued), John P. Nicoara, Nicoara & Steagall, Peoria, IL, for Robert Cooper and Mariann Pogge.

Edward J. Cunningham (argued), Brown, Hay & Stephens, Springfield, IL, for Wal–Mart Stores, Inc.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

The question before us is whether, prior to its recent demise in the Illinois Legislature, the Illinois Structural Work Act covered Robert Cooper when he fell in a muddy ditch near a construction site.

On July 7, 1992, Cooper was carrying three or four 4–inch–square covers for electrical boxes to the site of the construction of a Wal–Mart store near Macomb, Illinois. To reach the site he had to cross a ditch which was about 6 feet deep with an 8–foot incline. At the lowest portion of the ditch two 2–by–12 planks had been laid. Along the incline there were pallets for workers to walk on. During periods of rainfall the ditch became muddy and slippery. On the day of the accident the ditch was wet and the pallets were covered with mud. For that reason Cooper walked alongside the pallets, but he slipped and fell, landing on one of them. Before the accident workers had complained to the job superintendent about the condition of the ditch. Cooper contends that to be safe, the site required a manbridge with a handrail for workers to use in crossing the ditch.

At the time of the incident Cooper owned and worked for Mascouten Bay Contractors, Inc., d/b/a Cooper Electric, a subcontractor on the project. After his fall he sued Wal–Mart and Carl A. Nelson Co., the general contractor at the site. The complaint included a claim against Wal–Mart under the Structural Work Act (SWA), 740 ILCS 150/1 (West 1994), and claims against Nelson under that Act and also for common law negligence and willful and wanton conduct. Wal–Mart and Nelson filed motions for summary judgment. All the claims were dismissed, though the common law claims against Nelson were later reinstated through a course of events not relevant to our current discussion. The basis for the dismissal of claims under the Structural Work Act was that Act was not applicable to the facts of this case.

After summary judgment was granted on the only claim before it, Wal–Mart moved for the entry of judgment under Rule 54 of the Federal Rules of Civil Procedure. The district court found that there was "no just reason for delay" and entered judgment, thus paving the way for this appeal. Cooper filed a motion in this court to dismiss the appeal for lack of jurisdiction. A panel of judges denied the motion. Although Cooper continues to argue that the certification was not proper, we are convinced that there was, in fact, no just reason for delay and thus decline to depart from the prior decision denying his motion to dismiss the appeal. We turn then to Cooper's appeal of the entry of summary judgment against him.

█ Cooper contends that the Structural Work Act should apply to the facts of his case. It is somewhat unclear whether he claims that the planks which were in place in the ditch were unsafe in violation of the Act or whether the failure to provide a safe manbridge was the violation, or both. And, in

fact, it does not matter. A failure to provide a proper structure can be a violation of the Act as much as the providing of an unsafe structure. *Louis v. Barenfanger,* 39 Ill.2d 445, 236 N.E.2d 724 (1968), *cert. denied,* 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 271; *Meyer v. Caterpillar Tractor Co.,* 135 Ill.2d 1, 142 Ill.Dec. 128, 552 N.E.2d 719 (1990).

■ We must determine whether a structure (either one which was in existence or one which should have been in existence) being used to reach the job site is one which falls under the Act's coverage. The Act provides:

> All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected or constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.

The question whether a device falls within the coverage of the Act is a question of statutory construction, and therefore a question of law is presented. A federal court, sitting in a diversity case like this, must determine—which in this case is a bit tricky—what the Illinois courts would decide. Ordinarily, we look to the supreme court of a state, and if there is no dispositive ruling from that court, we examine the relevant rulings from other courts in the state. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The Illinois courts have spoken to the scope of this Act, but each case is, predictably enough, highly fact-specific and, therefore, not necessarily dispositive of our case.

As we said, the SWA no longer exists. It was repealed, effective February 14, 1995. The repeal was what at least one newspaper called a "controversial goal of the state GOP since the 1970s." *The State Journal–Register* (Springfield, IL), Feb. 15, 1995, at 3.

The SWA became law in 1907 at a time when Illinois did not have a workers' compensation act. The Illinois Workmen's Compensation Act was enacted four years later, in 1911. Before these laws were enacted, workers' claims for injuries were often defeated on the basis of contributory negligence or assumption of the risk. *Meyer.* The purpose of the SWA was to protect persons in the extrahazardous occupations of working at construction sites. *Osborne v. Tarwater,* 259 Ill.App.3d 703, 197 Ill.Dec. 657, 631 N.E.2d 879 (1994).

In its 88 years of life, the SWA generated its share of case law. As Cooper points out, the scope of the law has been a source of some disagreement on the Illinois Supreme Court. Dissents regarding the scope of the SWA are fairly common. *McNellis v. Combustion Engineering, Inc.,* 58 Ill.2d 146, 317 N.E.2d 573 (1974); *Tenenbaum v. City of Chicago,* 60 Ill.2d 363, 325 N.E.2d 607 (1975); *Lafata v. Village of Lisle,* 137 Ill.2d 347, 148 Ill.Dec. 732, 561 N.E.2d 38 (1990). And, as we said, it seems that the facts of no two cases are the same, or even truly analogous.

■ It is into this fray that we now jump to determine whether the federal district court sitting in diversity here made the right call in this case. At the outset, we note that there are principles on which, it seems, everyone agrees. One is that the Act should be given a liberal construction to effectuate its purpose of protecting construction workers engaged in extrahazardous activities. On the other hand, the Act does not cover all construction activities. *Vuletich v. U.S. Steel Corp.,* 117 Ill.2d 417, 111 Ill.Dec. 586, 512 N.E.2d 1223 (1987).

■ Appellate courts enjoy creating "prong tests," and we have one here. The analysis controlling whether a device falls within the Act has three prongs: what was the intended use of the device at the time of the injury; is there a connection between the injury and the hazardous nature of the device; and was the danger involved in the use of the support one which the legislature intended to eliminate. *Osborne.*

The two Illinois Supreme Court cases which the parties find most relevant to Cooper's accident are *Vuletich* and *Lafata*. *Vuletich* found the Act not to apply to its facts, while in *Lafata* the Act was said to apply. The author of *Vuletich* dissented in *Lafata*.

On a snowy day, the plaintiff Vuletich fell down a temporary flight of steps, with no railing, on a tool storage shed at a construction site. The court stated that the inquiry into whether the statute applies should focus on the intended use of the device in question. Were the stairs a "support" in terms of the statute? or were they simply a pathway providing entry to the trailer where the tools were stored? They were found to be a pathway and not within the coverage of the Act.

The injured LaFata, on the other hand, was hurt when he was struck by an endloader. The endloader was transporting a section of concrete pipe suspended from a cable. LaFata was walking alongside the pipe, holding one end to keep it from tilting. He tripped and was run over by the endloader. The endloader in *Lafata* was a device, such as those enumerated in the Act. The question of the Act's applicability was raised, however, because the endloader was being used to "transport" materials, not to "support" materials or workers. *Meyer* had determined that the Act could apply to devices used for the support of materials as well as devices used to support workers, but the court did not specifically say it applied to "transporting" materials. In *Lafata*, the court found the Act applicable to devices used to transport materials, saying that the "danger inherent in the way in which the endloader was used had a peculiar connection with the construction of the structure." At 358, 148 Ill.Dec. 732, 561 N.E.2d 38. This, the court said, was an activity of a "particularly hazardous nature and one that the General Assembly was attempting to alleviate when it passed the Structural Work Act."

Wal–Mart argues that the case before us resembles *Vuletich* in that the ditch Cooper fell in was part of a pathway to the construction site. His delivery of work materials to the job site over the path was not a hazardous activity warranting the protection of the

Act. The district court agreed with this analysis, finding the case to fall "squarely within the *Vuletich* line of cases...." Cooper, on the other hand, points out that *Lafata* is a more recent decision which calls the ruling in *Vuletich* into question and which should inform our analysis of the issue.

We see nothing in *Lafata* which dictates that *Vuletich* is no longer good law in Illinois. *Lafata*, in fact, cites *Vuletich*. That one case applies the Act and the other does not is not surprising. The facts in the two cases are significantly different from one another. What we need to determine is on which side of the line Cooper's case falls.

Cooper says he was carrying, i.e., transporting, materials to the job site over the planks in the ditch and therefore the bridge falls within the Act; it was not a mere pathway, as in *Vuletich*, but rather falls within the holding of *Lafata*. We cannot agree, nor do we think the Illinois Supreme Court would agree. He was working on a path to a work site and happened to be carrying a few small items.

Also, cases decided in the appellate courts of Illinois continue to rely on the reasoning of *Vuletich* for the principle that if the use of the device (or lack of device) is to be a mere pathway, then the Act does not apply. We provide a few examples.

In *Osborne*, worker, who was cleaning up a construction site, fell through a plywood subflooring into which an opening was cut through which a staircase from the basement would be built. The opening was covered with insulation. The worker stepped on the opening and fell through to the basement. The Act was said not to apply because the worker was simply walking past the area.

Similarly, in *Baldwin v. Twin Rivers Club*, 262 Ill.App.3d 516, 201 Ill.Dec. 592, 636 N.E.2d 1024 (1994), a worker was doing work in an attic, making alterations to a furnace. To reach the attic workers had to walk on planks which spanned an area without a permanent floor. On one occasion they moved a coil in excess of 50 pounds along this route. On the day of the fall, plaintiff Baldwin was returning to the attic after retrieving duct tape and nails when he fell through the plas-

terboard and drop-ceiling to the floor below. He contended that he used the plank as a support while he worked on the furnace and air conditioning unit. The court found that the plank was too far from the unit to be a support while he was working. It was a mere pathway and was not covered under the Act.

Another worker fell through a hole in one floor, landing on the floor below. He, too, was found to be using a pathway, not a temporary staging platform or scaffold. This was not, the court found, the kind of hazardous activity protected by the Act. *Miller v. Archer–Daniels–Midland Co.*, 261 Ill.App.3d 872, 199 Ill.Dec. 754, 634 N.E.2d 1108 (1994).

More recently, a worker performing asbestos removal fell when he was entering a work area through a shower decontamination unit. He was stepping down from the shower platform when he slipped and fell. He contended that there should have been a handrail, that the risers were too high, and that, obviously, the steps got wet from the shower. Again the court looked to the intended use of the structure. In this case, it was a walkway, providing ingress and egress to the work site. *Steuri v. Prudential Insurance Co.*, 282 Ill.App.3d 753, 218 Ill.Dec. 234, 668 N.E.2d 1066 (1996).

Even closer on point, *Ralls v. The Village of Glendale Heights,* 233 Ill.App.3d 147, 174 Ill.Dec. 140, 598 N.E.2d 337 (1992), involved a worker who was testing for leaky pipes. He was injured when he slipped on a snow-covered earthen incline which was used to reach the area to which he needed access. He also contended that a handrail should have been provided on the incline. Relying on *Vuletich*, the court rejected the claim.

We agree with the district court that the ditch, which Cooper was crossing and into which he unfortunately fell, was a part of a pathway to the construction site. It was not a structure within the meaning of the Structural Work Act. The decision of the district court is, therefore,

AFFIRMED.